202 F.2d 61
 96 U.S.P.Q. 21
 VIRGIN ISLANDS CORP.
v.
W. A. TAYLOR & CO.
 No. 59, Docket 22448.
 United States Court of Appeals, Second Circuit.
 Argued Nov. 5, 1952.
Decided Jan. 8, 1953.
 
 Holmes Baldridge, Washington, D.C., Myles J. Lane, New York City, Irwin W. Silverman and David Lloyd Kreeger, Washington, D.C. (Harry I. Rand, Washington, D.C., of counsel), for plaintiff-appellant.
 Rogers, Hoge & Hills, New York City (James F. Hoge, Lenore B. Stoughton, New York City, Andrew J. Graham, Brooklyn, N.Y. and William F. Weigel, New York City, of counsel), for defendant-appellee.
 This is an appeal from an order dismissing an amended complaint for failure to state a cause of action pursuant to Rule 12(b)(6) F.R.C.P., 28 U.S.C. The facts, as stated in the amended complaint, are as follows:
 Plaintiff is a 'corporate agency of the United States,' created by Act of Congress of June 30, 1949, c. 385, 63 Stat. 350, 48 U.S.C.A. 1407ff., and successor to the Virgin Islands Company (referred to as 'VICO'), which also is a United States government corporation organized under the laws of the Virgin Islands. Defendant is a New York corporation. VICO and its successor were created for the purpose of promoting the general welfare of the inhabitants of the Virgin Islands through the economic development of those islands.
 After VICO, the original corporation, was organized, the Secretary of the Interior of the United States in 1934 leased to VICO a sugar factory and distillery. When the plaintiff corporation was created, title to those properties was transferred to it.
 In accord with the terms of the lease and its corporate charter, all the net proceeds of VICO's operations were used for the benefit of the inhabitants of the Virgin Island's. All of VICO's funds were deposited currently in the Treasury of the United States as a special fund, and at the end of each fiscal year the net profits, less reserves, were transferred to the general fund of the Treasury.
 On October 8, 1936, 'in order to develop a substantial demand for VICO rum (i.e., the rum produced at this distillery) in the United States and thereby to increase its volume of sales,' VICO contracted with defendant, appointing defendant as its sole agent and distributor for VICO in the United States, District of Columbia and Alaska. This agreement was superseded by a new five-year contract on March 30, 1940. When the 1936 agreement was effected, the parties had not decided on a name and label for the product in the United States market. In December, 1936, the Governor of the Virgin Islands suggested the name 'Government House.' President Roosevelt upon request sketched the label. Defendant asked the Secretary of the Interior to grant permission to use the 'Government House' name, urging that "the most valuable asset' of VICO rum was that it 'has been made and controlled from start to finish by a corporation set up by the United States Government,' and that 'the consuming public as well as the distributing trade' could be informed by the label and by advertisement that 'the rum has back of it a United States Government controlled corporation." The name and label were subsequently approved by the Secretary of the Interior and the President of the United States. The Federal Alcohol Administration granted its approval upon being advised 'that the rum in fact was being produced and would continue to be produced under the auspices of VICO, a government corporation * * * .'
 VICO first affixed the 'Government House' label to its rum on March 16, 1937. It made the first sale and shipment of VICO rum under that label on March 16, 1937, in the Virgin Islands. On March 27, 1937, it began shipments to the defendant, for resale in the United States. Defendant obtained the necessary certificate of label approval from the Federal Alcohol Administration of the Treasury Department upon the representation that the rum was being produced and would continue to be produced under the auspices of VICO, a Government corporation. Defendant then obtained registrations of both the 'Government House' name and picture from the patent office. Beginning in October, 1937, defendant conducted an extensive advertising campaign throughout the United States, identifying the 'Government House' name to the public with VICO rum, and emphasizing the governmental origin of the rum and the essential role of the product in the project to rehabilitate the economy of the Virgin Islands. All bottles of the rum which defendant sold bore the 'Government House' label and the following notice: 'Distilled directly and solely from cane juice by Virgin Islands Company, St. Croix, Virgin Islands, a Virgin Islands Government Corporation.'
 The 1936 and 1940 contracts with defendant provided that the parties should agree upon a label and that the brand and trade-marks should be the property of the defendant and might be registered by it in its name, subject to the option of VICO to acquire the trademarks if the agency terminated prior to the contract's expiration.[1]
 When these contracts were executed and thereafter, both parties understood, agreed, and intended that defendant should have the right to use the 'Government House' name, picture and label only in connection with the marketing of VICO rum and only for the duration of the agency and distributor relationship between VICO and defendant, and that on termination of that relationship, the right to use those symbols would simultaneously terminate and thereafter be vested in VICO;[2] moreover, the parties intended that when defendant filed its applications for registration of the 'Government House' name and picture, it would do so solely as agent and trustee for VICO; and the registrations issued to defendant were in fact issued to it only in that capacity.[3]
 In conformance with these understandings between the parties, when the 1940 agreement terminated on March 30, 1945, and with it defendant's agency and distributorship for VICO rum, VICO asserted that it had legal and equitable ownership of those symbols; defendant made the same assertion in its own behalf. Defendant persists in its claim and insists that is alone is entitled to use the 'Government House' symbols, that defendant may use the symbols on any liquor it desires, and that use of the symbols by VICO or by appellant, or by any of their designees, is unauthorized and unlawful. Also, since 1945, defendant has made efforts to obtain certification for use of the 'Government House' symbols on Puerto Rican rum which it has sold or proposed to sell in the United States; and has represented to state officials that it has the exclusive right to sell liquor under the 'Government House' symbols; and has requested such officials to prohibit the sale of VICO rum by appellant or its designees under the 'Government House' label.
 The 1940 agreement expired in March, 1945, and the parties failed to agree on a renewal. VICO then entered into a five-year contract with the Munson G. Shaw Company, designating Shaw its exclusive sales agent for the sale of VICO rum in the United States, Alaska, and Hawaii. Shaw then sought and received label approval from the Alcohol Tax Unit, Bureau of Internal Revenue (which had succeeded to the functions of the Federal Alcohol Administration). At about the same time the Alcohol Tax Unit denied an application by one of defendant's affiliates requesting approval of the 'Government House' name on a Puerto Rican rum of the affiliate.[4]
 On March 31, 1950, defendant and its affiliate filed an application with the Alcohol Tax Unit, asking approval, previously denied them, to use the 'Government House' label on rum produced by the affiliate in Puerto Rico. When it made this application, defendant erroneously represented to the Alcohol Tax Unit that its ownership of the 'Government House' name, picture, label, and trademarks had been finally established; and that there was no longer any dispute as to its exclusive rights as to their use; and that plaintiff had abandoned all its claims to them. Relying on such erroneous representations, the Alcohol Tax Unit granted defendant the certificate of label approval it had previously denied. The label approval is now in effect, and defendant intends and is threatening imminently to sell Puerto Rican rum in the United States as 'Government House' rum and under the 'Government House' name, picture and label.
 In 1949 the Virgin Islands Corporation, known as VICORP, was created to succeed VICO, and title to the leased properties was transferred to it. The act creating VICORP conditioned its existence upon termination of its rum-producing activities. When the contract with Shaw expired in 1950, VICORP leased the distillery to A. H. Riise Distillers Corporation for one year, with an option to renew for eight years, the lease granting Riise the right to dispose of the rum on hand and that produced during the term of the lease, under the 'Government House' label, subject to approval of the Alcohol Tax Unit, which approval Riise's affiliate obtained. Since July 1950, Riise and its affiliates have used the 'Government House' name, picture and label in their sales of VICO rum.
 The 'Government House' name, picture and label have heretofore always been used exclusively on VICO rum and have always signified only that rum. The plaintiff alleges that defendant, by its conduct in using those 'Government House' symbols exclusively on VICO rum, in advertising and promoting the symbols solely in connection with VICO rum, and in otherwise closely identifying them exclusively with VICO rum, has dedicated the 'Government House' symbols to VICO and solely for the application to VICO rum. The uninterrupted use of the 'Government House' symbols, according to the complaint, is vital to plaintiff's welfare and that of the inhabitants of the Virgin Islands. Defendant's threatened use of those symbols on Puerto Rican rum or any liquor other than VICO rum would deceive and mislead the public, would irreparably damage plaintiff's good rill, and would constitute unfair competition against plaintiff. Defendant trademark registrations of the 'Government House' name and picture cast a cloud on plaintiff's title and damage and prejudice its rights. Defendant's acts and conduct have impaired plaintiff's property, rights and interests; have interfered and will interfere with plaintiff's effective discharge of its governmental functions, and have caused and will cause plaintiff irreparable injury and damage.
 Plaintiff asked an order which would (1) enjoin defendant from using the 'Government House' symbols on any product other than VICO rum and, particularly, as defendant threatens to do, on Puerto Rican rum; (2) direct defendant to assign its trademark registrations of the 'Government House' name and picture to plaintiff; and (3) enjoin defendant from asserting any claim in the 'Government House' symbols in opposition to plaintiff or its designees.
 Before SWANN, Chief Judge, and L. HAND and FRANK, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 1. A motion to dismiss a complaint, without the aid of anything except the complaint itself, is usually a most undesirable way for a defendant to seek a victory. For, on such a motion, the court must construe the complaint's language in a manner most favorable to the plaintiff; and, if that language is at all ambiguous, seldom will it, when thus generously construed, fail to show a cause of action. So here, interpreting the complaint as we must, we conclude that the district judge erred.
 
 
 2
 2. The defendant relies on this sentence in clause 11 of the five-year 1940 contract: 'The brand and trademarks shall be the property of the Importer and may be registered by it in its name.' This, says defendant, compels a decision in its favor. But, as this sentence does not dwell alone, it must be reconciled with the other provisions.
 
 
 3
 3. The succeeding sentences of clause 11 are illuminating. They provide that if, during the five-year period- from March 30, 1940 to March 30, 1945- the defendant either liquidates its business or discontinues the importation or sale of alcoholic liquor, then VICO shall have 'the option to purchase the trademark' at a price to be determined by appraisers. We find it difficult to believe (absent evidence) that the parties meant that, if the defendant ceased operations on, say, February 1, 1945, VICO had the option to buy the name, but that if the operations continued some sixty days longer- until March 30, 1945, when the five-year contract period expired- then VICO lost all rights to the name. For purposes of a motion to dismiss, we think clause 11 must be interpreted to mean that, if the operations continued for the full five-year period, the entire right to the name should be in VICO at the end of that period, and without any payment to defendant.
 
 
 4
 4. This interpretation finds support in the complaint which, interpreted generously in plaintiff's favor, tells the following: (1) When the first contract was made in October 1936, the parties contemplated that a name would be devised under which VICO rum would be marketed. (2) The name 'Government House' and the label were subsequently devised in December 1936. (3) The parties at that time agreed that defendant should have an exclusive right to use the name and label but only until the contract period ended, at which time the entire right thereto would vest in VICO. (4) On March 24, 1937, defendant registered them but solely as agent for VICO. (5) Beginning in October 1937, the defendant began advertising VICO rum, emphasizing that its sale was part of a Government project to rehabilitate and further the economic recovery of the inhabitants of the Virgin Islands. The first shipment was advertised as the culmination of the 'Virgin Islands three-year recovery plan'; the rum was called 'a humanitarian project as well as a beverage.' (6) The name and label thus became associated in the minds of consumers with a rum produced in the Virgin Islands, a rum with the sale of which the government of the Virgin Islands had a connection. (7) When the March 30, 1940 contract was made, the parties knew of this consumer attitude. (8) The use of the name and label in the sale of other rum would deceive and mislead consumers, as defendant's use is doing.
 
 
 5
 The foregoing facts we must take as if they were proved. If, then, defendant's interpretation of clause 11 of the 1940 contract were correct, it would be plain that the parties, when they executed it, intended that, after its expiration on March 30, 1945, defendant should be able, if it so desired, to deceive consumers (as it now does). Such an interpretation should be avoided where possible. For 'when there is a choice, a court will prefer that construction which is lawful'[5] and not one which imputes to the parties a purpose to make possible the public's deception.
 
 
 6
 5. Congress, in the Act of June 30, 1949, incorporating plaintiff, provided that 'the Corporation shall not engage in the manufacture of rum or other alcoholic beverages.'[6] We do not read this provision as prohibiting plaintiff from engaging in the sale of rum.[7]
 
 
 7
 6. The word 'property' in the first sentence of clause 11, especially in the light of the succeeding sentences, is at best ambiguous. What the parties meant by the word may therefore be shown by evidence as to their understanding in that respect, even if that understanding preceded, or was contemporaneous with, the making of the contracts. This, we think, is sound doctrine in all jurisdictions, despite the parol evidence rule.[8] Accordingly, it is unnecessary for us to determine what 'law' governs, when, as here, the record does not give us any information as to where the contract was executed.
 
 
 8
 Reversed.
 
 
 
 [1]
 Paragraph 11 of the 1936 agreement reads in pertinent part: 'Trade Marks. The brand and trade marks shall be the property of the Importer and may be registered by it in its name. If at the end of one year from the date hereof the Importer does not renew this contract then the Importer agrees to transfer and assign the trade mark and any registration thereof to the Shipper. If said contract is renewed for a period of two years and during the period this contract is in effect the Importer shall liquidate its business or discontinue the importation or sale of alcohol liquor, then the Shipper shall have the option to purchase the trade mark either in its own name or in the name of its assignee or designee.'
 Paragraph 11 of the 1940 agreement reads in part: 'Trade Marks. The brand and trade marks are and shall continue to be the property of the Importer and may be registered and reregistered by it in its name. If during the period this contract is in effect the Importer shall liquidate its business or discontinue the importation or sale of alcoholic liquor, then the Shipper shall have the option to purchase the trade mark either in its own name or in the name of its assignee or designee.'
 
 
 [2]
 Paragraph 9 of the amended complaint reads: 'At the time when the October 8, 1936 agreement was executed, and again when the 'Government House' name, picture, and label were originated and devised, and again when the March 30, 1940 agreement was executed; it was understood, agreed, and intended by VICO and defendant that defendant would have the exclusive right to use the 'Government House' name, picture, and label only in connection with the marketing of VICO rum and only for the duration of the agency and distributor-relationship between VICO and defendant, and it was further understood, agreed, and intended that upon the termination of that relationship, such right in defendant would simultaneously terminate and would thereafter be vested in VICO. It was on that understanding and with such intent that the October 8, 1936 and March 30, 1940 agreements were entered into by VICO and defendant. VICO had no power or authority to vest any greater rights in defendant with respect to the use of the said name, picture, and label.'
 Paragraph 17 of the amended complaint reads: 'In executing the October 8, 1936 agreement and the March 30, 1940 agreement, both VICO and defendant in fact intended to vest the right to use the 'Government House' name, picture, and label in defendant solely as agent and trustee for VICO; and the agreements in fact were understood to and were operative to vest the said right of user in defendant solely as agent and trustee for VICO.'
 
 
 [3]
 Paragraph 13 of the amended complaint reads: 'The said applications by defendant for registration of the 'Government House' name and picture with the Patent Office in fact were intended to be filed and were filed by defendant solely as agent and trustee for VICO. The said trademark registrations issued by the Patent Office on the 'Government House' name and picture in fact were issued to defendant solely as agent and trustee for VICO.'
 
 
 [4]
 Paragraph 21 of the amended complaint reads: 'On April 6, 1945 the said Alcohol Tax Unit issued the following ruling under the Federal Alcohol Administration Act:
 "The connotation of the name 'Government House,' its use upon a product of the Virgin Islands Company for a period of some nine years, and the publicity which the marketing of this product has received, have, in the view of this office, created the impression on the part of the consuming public that rum denoted by this name is a product manufactured in the Virgin Islands by the Virgin Islands Company, a Government-controlled corporation. Under the circumstances, it is the Bureau's opinion that the use of this brand name, either upon rum produced elsewhere than in the Virgin Islands or by a concern other than the Virgin Islands Company, would result in consumer deception and would accordingly be prohibited by the terms of Section 5(e) of the Federal Alcohol Administration Act.'
 'On July 16, 1945, the said Alcohol Tax Unit denied the application of an affiliate of defendant requesting approval for the use of the 'Government House' name on a Puerto Rican rum produced by the said affiliate, on the following grounds:
 "The brand name 'Government House,' through wide publicity received over a period of several years, has become well known in consumer circles as the name of a rum produced by a Government-controlled corporation. This name is therefore deemed objectionable under Section 5(e) of the Federal Alcohol Administration Act and Section 33(b) of Regulations No. 5, Relating to Labeling and Advertising Distilled Spirits, issued thereunder, when used on labels of rum produced by any concern other than a Government-controlled corporation. Accordingly, the brand name 'Government House' must be deleted.'
 'On November 22, 1946, the said Alcohol Tax Unit made a similar ruling with respect to the use of the 'Government House' picture on a rum produced by the said defendant's affiliate:
 " * * * This illustration (the 'Government House' picture) has been employed on the 'Government House' label and in advertisements of this product for many years, and through the wide-spread publicity which this product has received, the emblem has become closely associated in the public mind with a Virgin Islands rum which has been produced by a Government-controlled corporation. The use of this illustration on a rum originating elsewhere than in the Virgin Islands or produced by a company other than a Government-controlled corporation would result in consumer deception and the label is therefore deemed objectionable under Section 5(e) of the Federal Alcohol Administration Act and pertinent provisions of Regulations No. 5, Relating to Labeling and Advertising of Distilled Spirits."
 
 
 [5]
 See, e.g., Eddy v. Prudence Bonds Corp., 2 Cir., 165 F.2d 157, 161; American Machine & Metals v. DeBothezat Impeller Co., 2 Cir., 180 F.2d 342, 347
 
 
 [6]
 48 U.S.C.A. § 1407b(h)
 
 
 [7]
 After the amendment constituting this provision was agreed to on the House floor, the following amendment was offered and defeated: 'Provided further that all investments and property which relate directly to the making of rum shall be sold or discontinued on or before July 1, 1951.' (95 Cong.Rec. 5716.) Thus, although Congress barred plaintiff from itself manufacturing rum, it did not require appellant to divest itself of the rum distilling facilities, whose most advantageous use from the point of view of return to the Islands is, of course, in the production of rum. Congress and the Congressional committees, when considering the legislation which became the Act of June 30, 1949, were fully informed of VICO's methods of operation of the properties in the Virgin Islands- particularly the distributorship contracts which had been entered into first with defendant and subsequently with another distributor, Shaw. They were also aware that the use of these Government-owned properties for the production and sale of rum was the best, indeed the only, means of economically exploiting them. Hearings before Sub-Committee of Committee on Appropriations, 'Government Corp. Appropriation Bill 1949.' (H.R. 80 Cong. 2d Sess.) pp. 332 et seq. When Congress, with such knowledge, refused to order the sale of properties by VICO, it necessarily approved their retention as well as their use and operation, the only prohibition being against government manufacture for its own account. The only alternative would have been for appellant to shut down the properties and to keep them shut down, which would have meant deterioration, obsolescence and the ultimate loss of the government's investment. This alternative, we think, rejected by Congress in refusing to adopt the proposal that 'all investments and property which relate directly to the making of rum shall be sold or discontinued * * * .'
 
 
 [8]
 We can arrive at the same conclusion on this ground: Clause 11 shows that the writing did not contain the full understanding of the parties as to the disposition of the name after the term of the contract expired