## WHEELDIN ET AL. *v.* WHEELER.

No. 493.   Argued April 23, 1963.—Decided June 3, 1963.

*A. L. Wirin* argued the cause for petitioners.   With him on the briefs were *Fred Okrand* and *Nanette Dembitz.*

*Alan S. Rosenthal* argued the cause for respondent. With him on the brief were *Solicitor General Cox, Acting Assistant Attorney General Guilfoyle* and *Mark R. Joelson.*

Mr. Justice Douglas delivered the opinion of the Court.

Petitioner Dawson [1] was served with a subpoena to appear before the House Un-American Activities Committee. He alleges that the subpoena was signed in blank by the Committee Chairman and that respondent Wheeler, an investigator for the Committee, filled in Dawson's name without authorization of the Committee. We read the complaint, as does the Solicitor General, most favorably to Dawson and conclude that the complaint alleges that no member of the Committee even attempted to delegate the Committee's subpoena power to Wheeler. The complaint also alleges that Wheeler intended to subject petitioner, when he appeared as a witness before the Committee, to public shame, disgrace, ridicule, stigma, scorn and obloquy, and falsely place upon him the stain of disloyalty without any opportunity of fair defense, to petitioner's irreparable injury. The complaint alleges not only the lack of authority of respondent Wheeler to fill in the blank subpoena but also the unconstitutionality of the House Resolution and the Act of Congress, 60 Stat. 828, authorizing the Committe to act and to subpoena witnesses. The complaint alleges that the mere service of the subpoena on Dawson cost him his job and that Wheeler caused service to be made while petitioner was at work knowing that loss of employment would result. It prays that the subpoena be declared void and of no force or effect, and asks for damages and for an injunction.

The District Court denied declaratory and injunctive relief, holding that since Dawson's appearance did not seem imminent the case was not ripe for equitable intervention and that the mere apprehension that a federal

---

[1] Petitioner Donald Wheeldin was in the case when we granted certiorari. But since that time Wheeldin has moved for leave to withdraw his petition, which motion we hereby grant.

right might be infringed at some future time did not warrant declaratory or injunctive relief at the present time. The District Court held that no federal cause of action was stated as respects damages and dismissed the complaint for lack of jurisdiction over the subject matter. The Court of Appeals held that declaratory relief, being within the District Court's discretion, was properly denied and that the claim for injunctive relief had become moot. It held, however, that "in the sense of *Bell* v. *Hood,* 327 U. S. 678," there was "jurisdiction to entertain the claim for money damages," and to that extent reversed. 280 F. 2d 293. On remand the District Court dismissed the action without opinion. The Court of Appeals affirmed. 302 F. 2d 36. The case is here on a petition for a writ of certiorari which we granted. 371 U. S. 812. The basic question presented is whether a federal claim for damages is stated.

We agree with the Court of Appeals in its first opinion (280 F. 2d 293) that on the face of the complaint the federal court had jurisdiction. As we stated in *Bell* v. *Hood,* 327 U. S. 678, 685, "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the District Court has jurisdiction." And see *Bock* v. *Perkins,* 139 U. S. 628, 630.

But on the undisputed facts, as they appear on argument of the case, no federal cause of action can be made out. Dawson's main reliance is on the Fourth Amendment, which protects a person against unreasonable searches and seizures. Its violation, he contends, occurred when an unauthorized subpoena was served on him. But there was neither a search nor a seizure of him. He was neither arrested nor detained pursuant to any subpoena; nor, so far as the complaint discloses, did he

respond to the subpoena and either testify or refuse to testify; nor was the subpoena used to cite him for contempt. Cf. *Williams* v. *United States,* 341 U. S. 97. In short, the facts alleged do not establish a violation of the Fourth Amendment. And the provisions of the Civil Rights Act are clearly inapplicable to this kind of case. See R. S. §§ 1979, 1980, 42 U. S. C. §§ 1983, 1985; [2] *Tenney* v. *Brandhove,* 341 U. S. 367; *Monroe* v. *Pape,* 365 U. S. 167.

Apart from any rights which may arise under the Fourth Amendment, Congress has not created a cause of action for abuse of the subpoena power by a federal officer, at least where the subpoena was never given coercive effect. No claim is made that the Federal Tort Claims Act reaches that far.[3] Cf. *Hatahley* v. *United States,* 351 U. S. 173. There is much discussion in the briefs of *Barr* v. *Matteo,* 360 U. S. 564. But that was a libel action brought against a federal official in the District of Columbia. And the immunity doctrine of that case and *Howard* v. *Lyons,* 360 U. S. 593, upon which the

---

[2] By § 1983 Congress made liable in civil suits "every person" who "under color" of any state or territorial law deprives anyone of a right "secured by the Constitution and laws" of the United States. But respondent Wheeler was not acting "under color" (see *Screws* v. *United States,* 325 U. S. 91, 108, 111; *Monroe* v. *Pape,* 365 U. S. 167, 171–187) of state or territorial law. And even if § 1985 applies to federal officers (compare *Screws* v. *United States, supra,* with *Collins* v. *Hardyman,* 341 U. S. 651) who conspire with others to commit acts falling within the narrow confines of that statute, no such conspiracy is here involved. See generally 1 Emerson and Haber, Political and Civil Rights in the United States, 79–100; 1961 United States Commission on Civil Rights Report, Book 5, 71–77.

[3] 28 U. S. C. § 2680 provides: "The provisions of [the Tort Claims Act] . . . shall not apply to—

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

Court of Appeals rested, is not relevant here, for, as the Solicitor General has conceded, under the allegations of the complaint respondent Wheeler was not acting sufficiently within the scope of his authority to bring the doctrine into play.

It is argued that the statute governing the issuance of subpoenas [4] not having been complied with, a cause of action for damages "arises" under it within the meaning of 28 U. S. C. § 1331. As respects the creation by the federal courts of common-law rights, it is perhaps needless to state that we are not in the free-wheeling days antedating *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. The instances where we have created federal common law are few and restricted. In *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, we created federal common law to govern transactions in the commercial paper of the United States; and we did so in view of the desirability of a uniform rule in that area. *Id.,* p. 367. But even that rule was qualified in *Bank of America* v. *Parnell,* 352 U. S. 29. In *Tunstall* v. *Brotherhood,* 323 U. S. 210, the federal right was derived from the federal duty of the union to act as bargaining representative for all members of the union.[5] But it is difficult for us to see how the present statute, which only grants power to issue subpoenas, implies a cause of action for abuse of that power. Congress

---

[4] Legislative Reorganization Act of 1946, P. L. 601, c. 753, House Rule XI (1)(q)(2), 60 Stat. 828: "Subpenas may be issued under the signature of the chairman of the committee [on Un-American Activities] or any subcommittee, or by any member designated by any such chairman . . . ."

[5] The other cases cited are singularly inapposite. *Holmberg* v. *Armbrecht,* 327 U. S. 392, was a suit to enforce a liability created by a federal statute, and the question was what remedies the federal courts should apply. *Howard* v. *Lyons,* 360 U. S. 593, held in a diversity suit for libel against a federal official that, although state law created the right, the defense of privilege is to be formulated by the federal courts. *Id.,* 597.

has not done here what was done in *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, and left to federal courts the creation of a federal common law for abuse of process.

When it comes to suits for damages for abuse of power, federal officials are usually governed by local law. See, *e. g., Slocum* v. *Mayberry,* 2 Wheat. 1, 10, 12. Federal law, however, supplies the defense, if the conduct complained of was done pursuant to a federally imposed duty (see, *e. g., Mayor* v. *Cooper,* 6 Wall. 247; cf. *Tennessee* v. *Davis,* 100 U. S. 257), or immunity from suit. See *Barr* v. *Matteo, supra; Howard* v. *Lyons, supra.* Congress could, of course, provide otherwise, but it has not done so. Over the years Congress has considered the problem of state civil and criminal actions against federal officials many times. See Hart and Wechsler, The Federal Courts and the Federal System, 1147–1150. But no general statute making federal officers liable for acts committed "under color," but in violation, of their federal authority has been passed. Congress has provided for removal to a federal court of any state action, civil or criminal, against "[a]ny officer of the United States . . . , or person acting under him, for any act under color of such office . . . ." 28 U. S. C. § 1442 (a)(1). That state law governs the cause of action alleged is shown by the fact that removal is possible in a nondiversity case such as this one only because the interpretation of a federal defense makes the case one "arising under" the Constitution or laws of the United States. See *Tennessee* v. *Davis, supra; Gay* v. *Ruff,* 292 U. S. 25, 34. We conclude, therefore, that it is not for us to fill any *hiatus* Congress has left in this area.

No question of pendent jurisdiction as in *Hurn* v. *Oursler,* 289 U. S. 238, is presented, for petitioner has not attempted to state a claim under state law.

We hold on the conceded facts that no federal cause of action was stated and that the judgment must be and is

*Affirmed.*

MR. JUSTICE BRENNAN, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK join, dissenting.

The Court of Appeals characterized petitioners' suit as follows: "The gravamen of their complaint is that the subpoenas were invalidly, maliciously and mischievously issued and served for the sole purpose of exposing them to public scorn with consequent loss of employment and of esteem. They assert that they have a federal right to protection againt such abuse of federal process; that since the subpoenas were not properly issued appellee in securing their issuance and service has subjected himself to personal liability." 302 F. 2d 36–37. The Court of Appeals did not, however, decide whether such a "federal right" exists and, if so, whether the complaint sufficiently alleged a denial of it. It sustained the District Court's dismissal on the sole ground that the allegedly unlawful acts had been committed by respondent in the line of his duty as a federal officer, and that therefore he was immune from suit by reason of the principles announced in *Barr v. Matteo,* 360 U. S. 564. In this Court, the Solicitor General of the United States, appearing as counsel for the respondent, candidly admits that the Court of Appeals misapplied *Barr v. Matteo.* In that case we upheld the governmental-officer immunity in respect of "action . . . taken . . . within the outer perimeter of petitioner's line of duty." 360 U. S., at 575. It has never been suggested that the immunity reaches beyond that perimeter, so as to shield a federal officer acting wholly on his own. A federal officer remains liable for acts committed "manifestly or palpably beyond his authority." *Spalding v. Vilas,* 161 U. S. 483, 498; see *Colpoys v. Gates,* 73 App. D. C. 193, 118 F. 2d 16; *Kozlowski v. Ferrara,* 117 F. Supp. 650; Note, Remedies Against the United States and Its Officials, 70 Harv. L. Rev. 827, 835 (1957). Liberally construed, see *Virgin Islands Corp. v. W. A. Taylor & Co.,* 202 F. 2d 61; 2 Moore, Federal Practice (2d ed. 1948),

¶ 12.08, at 2245, petitioner Dawson's complaint alleges no less.[1] He alleges that respondent "secured from the *staff* of said Committee, blank subpoenas in large numbers" (emphasis supplied), and this can be read, the Solicitor General concedes, "to allege that no member of the Committee even attempted to delegate the Committee's subpoena power to Wheeler." Since members of the Committee's *staff* clearly have no power to delegate the issuance of subpoenas, respondent, according to the allegations of the complaint, was acting "manifestly or palpably beyond his authority."[2]

I think the proper disposition of this case would be to vacate the Court of Appeals' judgment, based as it was wholly upon an erroneous ground, and remand the case to the Court of Appeals for consideration of the questions which that court found unnecessary to decide. I recommend this course because the instant case seems to me to raise novel and important questions which have not been adequately briefed or argued by the parties and which this Court consequently, in its opinion today, treats in a most cursory fashion.

The Court states that "Dawson's main reliance is on the Fourth Amendment." I cannot agree with this. As the Court of Appeals correctly apprehended, the gravamen of the complaint is the notion of a tort of malicious abuse of federal process by a federal officer. This to me raises a number of questions. Does the complaint state

---

[1] Petitioner Wheeldin has withdrawn from the case in this Court.

[2] It is not contended that respondent was acting under the orders of a superior officer which he reasonably believed to be lawful or authorized. Compare Gray, Private Wrongs of Public Servants, 47 Cal. L. Rev. 303, 317–318 (1959); Comment, 63 Col. L. Rev. 326, 334 (1963). And of course no issue is involved here of the scope of the immunity of Congressmen themselves from private civil suits. Cf. *Tenney* v. *Brandhove*, 341 U. S. 367, 378.

a claim actionable under common-law principles? If so, and if the claim is a creature of state law, may it never-, theless be entertained in the federal courts? Under what theory, if any, can the claim be deemed federal and within the original jurisdiction of the Federal District Courts? As will become apparent, these questions, which I shall discuss in order, do not require reference to the Fourth Amendment.[3]

The Court of Appeals described the instant action as one claiming malicious abuse of process. But, as usually defined, that tort "is committed when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to attain an unjustifiable end . . . ." 1 Harper and James, Torts (1956), § 4.9; see 3 Restatement of Torts § 682; Prosser, Torts (2d ed. 1955), § 100. Put succinctly, the tort is the "perversion" of legal process. *Mayer* v. *Walter,* 64 Pa. 283, 286. In the instant case, the process allegedly abused was not judicial, but legislative. I do not, however, consider the distinction material. But cf. Comment, 63 Col. L. Rev. 326, 327, n. 13 (1963). Abuse of administrative process seems to be a recognized aspect of the tort, see 1 Harper and James, *supra,* § 4.10; 3 Restatement of Torts § 680; *National Surety Co.* v. *Page,* 58 F. 2d 145; but cf. *Petherbridge* v. *Bell,* 146 Va. 822, 132 S. E. 683, and so does abuse of the judicial subpoena power, *Dishaw* v. *Wadleigh,* 15 App. Div. 205, 44 N. Y. Supp. 207. The con-

---

[3] In so confining my discussion, I mean to intimate no view on the questions whether the complaint states a violation of the Fourth Amendment and whether, if so, a remedy in damages is available. On the latter question, compare *Wiley* v. *Sinkler,* 179 U. S. 58; *Swafford* v. *Templeton,* 185 U. S. 487; and *Bell* v. *Hood,* 327 U. S. 678, 684, with *Bell* v. *Hood,* 71 F. Supp. 813; and *Johnston* v. *Earle,* 245 F. 2d 793. These questions, too, should be determined in the first instance by the courts below. See *Bell* v. *Hood,* 327 U. S. 678.

gressional subpoena is no less mandatory than the judicial, see *Watkins* v. *United States,* 354 U. S. 178, 187–188, no less a placing of governmental compulsion upon the recipient, cf. *Sinclair* v. *United States,* 279 U. S. 263, 292. It may, of course, be the first link in a chain leading to eventual criminal prosecution. See, *e. g.,* R. S. § 102, as amended, 2 U. S. C. § 192.

I should point out that the conventional notion of abuse of process assumes that the wrongdoer is a private person who procures the issuance of valid, authorized legal process, albeit with a wrongful intention and for an unjustifiable end. Comment, 63 Col. L. Rev. 326, 327, n. 13. The tort, thus, does not depend on the validity of the process, which may be "technically correct," yet still abusive. In the instant case, however, liability is sought to be imposed upon the officer who issues the process, and his authority *vel non* is of the essence.[4] Pertinent here is the settled principle of the accountability, in damages, of the individual governmental officer for the consequences of his wrongdoing. See, *e. g., Entick* v. *Carrington,* 19 Howell's State Trials 1029 (C. P. 1765); *Marbury* v. *Madison,* 1 Cranch 137, 163–168; cf. *Wolf* v. *Colorado,* 338 U. S. 25, 30–31, n. 1. With respect to federal officers, see, *e. g., Little* v. *Barreme,* 2 Cranch 169; *Elliott* v. *Swartwout,* 10 Pet. 137; *Mitchell* v. *Harmony,* 13 How. 115; *Buck* v. *Colbath,* 3 Wall. 334; *Bates* v. *Clark,* 95 U. S. 204; *Kilbourn* v. *Thompson,* 103 U. S. 168; *Belknap* v. *Schild,* 161 U. S. 10, 18; *Philadelphia Co.* v.

---

[4] The question of authority is, of course, distinct from that of immunity from civil suit. Even an unauthorized act may be within the scope of the immunity, so long as it is within the "outer perimeter" of the officer's "line of duty." *Barr* v. *Matteo, supra,* at 575. That, however, is a matter of defense. Whether respondent's issuance of the subpoena to petitioner Dawson was authorized by law would seem to be an element of the tort framed in the complaint.

*Stimson,* 223 U. S. 605, 619. This principle, in combination with the conventional notion of malicious abuse of process, seems to me ample warrant for concluding that the instant complaint makes out a common-law cause of action. Compare cases in which state judicial officers have been held liable in damages for abuse of process: *Williams* v. *Kozak,* 280 F. 373; *Dean* v. *Kochendorfer,* 237 N. Y. 384, 143 N. E. 229; *Hoppe* v. *Klapperich,* 224 Minn. 224, 28 N. W. 2d 780.

If so, and if we assume that this claim is actionable under California law [5] (postponing, for the moment, the question whether it may also be actionable under federal law), then it seems to me there are two possible theories for sustaining federal court jurisdiction over it. The first relies upon the principle of pendent jurisdiction drawn from *Hurn* v. *Oursler,* 289 U. S. 238. Since the complaint asserts a nonfrivolous claim under the Fourth Amendment, federal court jurisdiction attaches, *Bell* v. *Hood,* 327 U. S. 678, thereby permitting decision of the common-law claim which is based upon the same facts, see *id.,* at 686 (dissenting opinion).[6]

---

[5] The acts complained of as establishing the cause of action all took place, apparently, in California, and petitioner and respondent are both residents of California; thus, the tort law of California would seem to be the appropriate referent. Neither the parties nor the courts below have canvassed the possibly relevant California authorities and I have made no independent investigation of the question. But consider § 3281 of the California Civil Code: "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Cf. *Bell* v. *Hood,* 71 F. Supp. 813, 817; *Toscano* v. *Olesen,* 189 F. Supp. 118; but cf. Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn. L. Rev. 493, 502–503 (1955).

[6] The Solicitor General agrees that the Fourth Amendment claim in the complaint conferred federal court jurisdiction to dispose of it

Whether the instant complaint can be read as adequately claiming pendent jurisdiction would seem a matter best determined in the first instance by the courts below. I cannot accept the Court's flat assertion that "petitioner has not attempted to state a claim under state law," in view of the liberality of pleading practice under the Federal Civil Rules. "A motion to dismiss a complaint, without the aid of anything except the complaint itself, is usually a most undesirable way for a defendant to seek a victory. For, on such a motion, the court must construe the complaint's language in a manner most favorable to the plaintiff; and, if that language is at all ambiguous, seldom will it, when thus generously construed,

---

on the merits, and the Court of Appeals so held in an earlier phase of the instant litigation. 280 F. 2d 293 (*per curiam*). This result is clearly compelled by *Bell* v. *Hood*, 327 U. S. 678. On the remand in *Bell* v. *Hood*, the District Court held that a state law claim relying on the same facts as the Fourth Amendment claim could not be entertained under the doctrine of pendent jurisdiction because the Fourth Amendment claim did not state a cause of action. 71 F. Supp. 813, 820. This ground has been criticized, with the suggestion however that "the dismissal [might] have been more convincingly supported by saying that the dog would be wagged by his tail if plenary trial of an ancillary claim was compelled by a primary claim which could be disposed of on the pleadings." Hart and Wechsler, The Federal Courts and the Federal System (1953), 808; see Note, 62 Col. L. Rev. 1018, 1025–1026 (1962); *Salganik* v. *Mayor and City Council of Baltimore*, 192 F. Supp. 897. Whether this suggestion has merit or applicability in the instant case I am not prepared to say. I should also point out that if the federal question were deemed completely insubstantial on the merits, dismissal of the pendent claim might be appropriate on that ground. See *Levering & Garrigues Co.* v. *Morrin*, 289 U. S. 103, 105; *Emmons* v. *Smitt*, 149 F. 2d 869. I note finally that the District Court in *Bell* v. *Hood* on remand suggested that the doctrine of pendent jurisdiction pertains only to equitable claims. 71 F. Supp., at 820. This was error. See, *e. g.*, *Manosky* v. *Bethlehem-Hingham Shipyard, Inc.*, 177 F. 2d 529; Note, 62 Col. L. Rev. 1018, 1034–1041 (1962).

fail to show a cause of action." *Virgin Islands Corp.* v. *W. A. Taylor & Co., supra,* at 65. The dismissal of the instant complaint was on motion by defendant.

The second possible theory builds from *Smith* v. *Kansas City Title & Trust Co.,* 255 U. S. 180. A shareholder sued to enjoin the Trust Company, a Missouri corporation, from investing in certain federal bonds, on the ground that the Act of Congress authorizing their issuance was unconstitutional. It was claimed that under Missouri law an investment in securities the issuance of which had not been authorized by a valid law was *ultra vires* and enjoinable. The cause of action, thus, was state-created. Nevertheless this Court held that the action was one arising under federal law within the meaning of the predecessor section to 28 U. S. C. § 1331 (a). See also *Fielding* v. *Allen,* 181 F. 2d 163. It has been suggested that later decisions, *e. g., Puerto Rico* v. *Russell & Co.,* 288 U. S. 476; *Gully* v. *First Nat. Bank,* 299 U. S. 109, repudiated *Smith.* London, "Federal Question" Jurisdiction—A Snare and a Delusion, 57 Mich. L. Rev. 835, 853 (1959). But those decisions are clearly distinguishable as attempts to found federal jurisdiction upon "remote federal premises, or mere federal permission . . . , or other merely possible federal defenses." Hart and Wechsler, The Federal Courts and the Federal System (1953), 769. *Smith* remains firm authority for the principle that "where federal law has inserted itself into the texture of state law, a claim founded on the national legislation could be brought into a federal forum" even if the right of action was state-created. Mishkin, The Federal "Question" in the District Courts, 53 Col. L. Rev. 157, 166 (1953). Stated differently, "in the Smith case the claim under federal law was an essential ingredient of the plaintiff's case, without which he could assert no right to relief." Hart and Wechsler, *supra,* at 766. In

short, there is federal-question jurisdiction if a proposition of federal law is inherent in the plaintiff's claim. Cf. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemp. Prob. 216, 225 (1948).

How does the instant complaint fare under this standard? The matter is not free from doubt, but it is arguable, at least, that inherent in a claim to abuse of federal process by a federal officer are certain propositions drawn from the network of federal statutory and constitutional provisions governing congressional investigations. In other words, implicit in the notion of abuse of process are the principles controlling the proper use of process. Concretely, the instant complaint asserts that respondent's use of congressional process was unauthorized and was for an "unjustifiable end," p. 655, *supra;* surely the contours of this authority and the classification of justifiable and unjustifiable ends of congressional process are matters of federal law. Thus, just as *Smith* is a case "where state law incorporates federal standards by reference," Wechsler, *supra,* at 225, n. 46, so here a basic element of the common-law tort is the body of federal law authorizing and defining the issuance of federal legislative process. I do not wish, however, to be understood as suggesting that the analogy is perfect.[7]

I come now to the question whether petitioner Dawson's cause of action may be deemed created by federal law apart from the Fourth Amendment. It is not claimed that any federal statute in terms confers a remedy in

---

[7] In *Smith,* the investment powers of the Trust Company were subject to federal law governing the issuance of federal securities. Thus, substantially the only question in the case was the validity *vel non* of the issuance under federal law. Here, besides the question of respondent's authority *vel non* to issue the subpoena, there are questions, *e. g.,* malice, which might be thought to be rooted in the common law of abuse of process.

damages for malicious abuse of federal process by a federal officer.[8]  But it is argued that such a remedy (1) may be implied from the Act of Congress respecting the issuance of subpoenas by the House Un-American Activities Committee and its subcommittees, and (2) is given by the federal common law. .

The Legislative Reorganization Act of 1946, c. 753, § 121 (b), House Rule XI (1)(q)(2), 60 Stat. 828, provides in part: "Subpenas may be issued under the signature of the chairman of the committee [on Un-American Activities] or any subcommittee, or by any member designated by any such chairman . . . ." If this provision be interpreted to prohibit respondent from issuing the Committee's subpoenas on his own,[9] may a right of action in damages be implied in favor of one injured as a direct consequence of respondent's unlawful use of such a subpoena? I see no reason why it may not. "Implied rights of action are not contingent upon statutory language which affirmatively indicates that they are intended. On the contrary, they are implied unless the legislation evidences a contrary intention." *Brown* v.

---

[8] No claim here is made of a conspiracy to deny petitioner the equal protection of the laws. R. S. § 1980 Third, 42 U. S. C. § 1985 (3). Nor is this an action for breach of a United States marshal's bond, 28 U. S. C. § 544; in an earlier phase of the instant litigation, the complaint was dismissed as against a United States marshal and a sheriff as frivolous. 280 F. 2d 293 (*per curiam*). The Federal Tort Claims Act, 28 U. S. C. §§ 2671–2680, has nothing to do with the present case, since the Act imposes liability on the United States and does not pertain to the question of individual federal officers' personal tort liability. The Act excludes abuse of process and other intentional torts. See § 2680 (h).

[9] I do not reach the question, which was not decided below or discussed in the opinion of the Court today, whether the Committee may delegate the power to issue subpoenas to members of its staff; petitioner Dawson contends that no such delegation was here attempted, see p. 654, *supra*.

*Bullock,* 194 F. Supp. 207, 224, aff'd on other grounds, 294 F. 2d 415. Increasingly, the tendency in the federal courts has been to infer private rights of action from federal statutes unless to do so would defeat manifest congressional purpose. See, *e. g., Texas & Pac. R. Co.* v. *Rigsby,* 241 U. S. 33; *Tunstall* v. *Brotherhood of Locomotive Firemen & Enginemen,* 323 U. S. 210; *Neiswonger* v. *Goodyear Tire & Rubber Co.,* 35 F. 2d 761; *Reitmeister* v. *Reitmeister,* 162 F. 2d 691; *Fitzgerald* v. *Pan American World Airways,* 229 F. 2d 499; *Roosevelt Field, Inc.,* v. *Town of North Hempstead,* 84 F. Supp. 456; *Wills* v. *Trans World Airlines,* 200 F. Supp. 360; 2 Loss, Securities Regulation (2d ed. 1961), 932–956; Note, 48 Col. L. Rev. 1090 (1948). We must presume that Congress, in specifying the conditions for the lawful delegation of the Committee on Un-American Activities' subpoena power, was mindful of the grave injustices which might be done to individuals as a result of the flouting of those conditions. In this sense, Rule XI (1)(q)(2) may be said to have created a protected class of private persons of which petitioner Dawson, if the allegations of his complaint be true, is a member. Moreover, a private damages action affords the only practicable means of redressing the kind of wrong Dawson alleges. Since he was never called to testify he could not use the circumstances surrounding the issuance of the subpoena defensively,[10] and, for the same reason, his prayer for injunctive relief was struck below as moot, 280 F. 2d 293 *(per curiam).* And cf. *Pauling* v. *Eastland,* 109 U. S. App. D. C. 342, 288 F. 2d 126; *Mins* v. *McCarthy,* 93 U. S. App. D. C. 220, 209 F. 2d 307.

---

[10] Arguably, the validity of the subpoena could not be challenged in a criminal prosecution based on refusal to testify before the Committee, but presumably it could be challenged in a prosecution for willful default of subpoena. See R. S. § 102, as amended, 2 U. S. C. § 192; *McPhaul* v. *United States,* 364 U. S. 372.

Nor is it the case that a congressional rule (in the instant case contained in an Act of Congress) stands on a different footing, as respects judicial enforcement, from a rule respecting administrative, executive, or other conduct. It has long been settled that rules of Congress and its committees are judicially cognizable. *Christoffel* v. *United States,* 338 U. S. 84; *United States* v. *Smith,* 286 U. S. 6; *United States* v. *Ballin,* 144 U. S. 1. I therefore see no objection in principle to grounding a private action in such a rule.

A final approach to the problem of founding federal jurisdiction [11] is by way of the federal common law. Mr. Justice Brandeis' dictum: "There is no federal general common law," *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, 78, cannot, of course, be taken at its full breadth. "[A]lthough federal judicial power to deal with common-law problems was cut down in the realm of liability or its absence governable by state law, that power remained unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters, even though Congress has not acted affirmatively about the specific question." *United States* v. *Standard Oil Co.,* 332 U. S. 301, 307. "Were we bereft of the common law, our federal system would be impotent." *D'Oench, Duhme & Co.* v. *F. D. I. C.,* 315 U. S. 447, 470 (concurring opinion). And so in a wide variety of cases the federal courts have assumed to fashion federal common-law

---

[11] If Rule XI (1) (q) (2) were interpreted to create an implied right of action in favor of petitioner, his claim would be one arising under federal law within the meaning of 28 U. S. C. § 1331 (a), since the rule was enacted as part of an Act of Congress. It seems to me to make no difference that the instant complaint cites not the Legislative Reorganization Act, but rather H. Res. 5, 85th Cong., 1st Sess., wherein the provisions of the Act were adopted *in haec verba* as rules of the 85th Congress. See 103 Cong. Rec. 47 (1957).

rights.[12] Ordinarily, to be sure, such fashioning is done under the aegis of a more specific jurisdictional grant than 28 U. S. C. § 1331 (a). But I agree with the test set forth in *United States* v. *Standard Oil Co., supra,* and would recognize the existence of federal common-law rights of action "wherever necessary or appropriate" for dealing with "essentially federal matters." Plainly, this test supports recognition of a federal cause of action on the facts of the instant complaint. "[A]ctions against federal officials . . . are necessarily of federal concern." Wechsler, *supra,* at 220. This is not to say that federal law is necessarily implicated whenever the defendant is a federal officer. See *Johnston* v. *Earle,* 245 F. 2d 793. But where, as here, it is alleged that a federal officer acting under color of federal law has so abused his federal powers as to cause unjustifiable injury to a private person, I see no warrant for concluding that state law must be looked to as the sole basis for liability. Under such circumstances, no state interest is infringed by a generous construction of federal jurisdiction, and every consideration of practicality and justice argues for such a construction.[13] To be sure, once the federal common-law

---

[12] *E. g., Southern Express Co.* v. *Byers,* 240 U. S. 612; *Sola Elec. Co.* v. *Jefferson Elec. Co.,* 317 U. S. 173; *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, 367; *United States* v. *County of Allegheny,* 322 U. S. 174, 183; *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395; *United States* v. *Fullard-Leo,* 331 U. S. 256, 269–270; *Rea* v. *United States,* 350 U. S. 214; *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, 457; *Howard* v. *Lyons,* 360 U. S. 593, 597; *International Assn. of Machinists* v. *Central Airlines,* 372 U. S. 682, 691, 693, n. 17; *O'Brien* v. *Western Union Tel. Co.,* 113 F. 2d 539; *Kaufman* v. *Western Union Tel. Co.,* 224 F. 2d 723, 728; *Kardon* v. *National Gypsum Co.,* 73 F. Supp. 798; see Hart, The Relations Between State and Federal Law, 54 Col. L. Rev. 489, 530–535 (1954); *Bell* v. *Hood,* 327 U. S. 678, 684.

[13] Thus, it is unsettled whether the state courts have jurisdiction to entertain an action to enjoin a federal officer acting under color of federal law, Hart and Wechsler, *supra,* at 388–391, so that denial

cause of action is recognized, the much-mooted problem remains whether such a cause arises under federal law within the meaning of 28 U. S. C. § 1331 (a). This Court has never decided the question.[14] For the position that it does, see my separate opinion in *Romero* v. *International Terminal Operating Co.*, 358 U. S. 354, 389–412, and Kurland, The Romero Case and Some Problems of Federal Jurisdiction, 73 Harv. L. Rev. 817, 831–833 (1960).

Let me make clear that I am not suggesting that this Court enjoys the same freedom to create common-law rights of action as do truly common-law courts. But there is a matrix of federal statutory and constitutional principles governing the rights, duties, and immunities

---

of federal court jurisdiction over claims such as petitioner's might leave an injured party totally remediless. To be sure, there is state court jurisdiction of damages actions against federal officers. *Teal* v. *Felton,* 12 How. 284; *Buck* v. *Colbath,* 3 Wall. 334. But damages may not in every case be an adequate remedy. And if the existence of state damages remedies were relied upon to confine federal court jurisdiction to equitable actions against federal officers, a person seeking both equitable and damages relief could only invoke federal court jurisdiction at the cost of splitting his claim. So also, the broad provisions for the removal to federal courts of actions commenced against federal officers, 28 U. S. C. § 1442, unfairly give access to the federal courts to defendants which is denied plaintiffs. See Wechsler, *supra,* at 220–221. And it has been suggested that recognition of a federal cause of action against governmental officers might allow a more effective measure of damages than is presently available under state tort law. Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn. L. Rev. 493, 512 (1955).

[14] In *Romero* v. *International Terminal Operating Co.,* 358 U. S. 354, a majority of the Court held that claims under the general maritime law, which is a body of federal decisional law, did not arise under federal law for the purposes of § 1331 (a). But the Court based its decision on considerations peculiar to the maritime law and did not purport to resolve the broader question whether claims under federal common law are within § 1331 (a). See 358 U. S., at 395 (separate opinion).

of federal officers acting under color of federal authority. The existence of this matrix makes the matter of private actions against such officers respecting conduct alleged to be in excess of their authority of essentially federal concern, which justifies, in my view, the exercise of the residual common-law power which we unquestionably possess. "At the very least, effective Constitutionalism requires recognition of power in the federal courts to declare, as a matter of common law or 'judicial legislation,' rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress." Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. of Pa. L. Rev. 797, 800 (1957).

Thus the theories of an implied right of action based on Rule XI (1)(q)(2) and a federal common-law right ultimately coalesce. "It seems monstrous to imply that when Congress as a matter of federal law lays the foundation for a right or condemns any conduct as a wrong, nothing can be done about it by courts without clear warrant in statutory language and legislative history." Powell, Use of Common-Law Techniques and Remedies in Statutory Enforcement—A Study in Judicial Behavior, 57 Harv. L. Rev. 900, 902 (1944). Rule XI (1)(q)(2) at least provides the foundation; the superstructure may be derived from the various sources I have canvassed. I should not like to believe that this Court is helpless to inaugurate in the federal courts the salutary "[r]estoration of the doctrine that a government officer is civilly responsible in damages for an exercise of official discretion which is motivated by personal vindictiveness or desire for personal gain." Hart and Wechsler, *supra*, at 1230. I do not believe that the matter can properly be remitted entirely to the state courts. See Foote, *supra*, note 13, for a trenchant criticism of existing state remedies

for the wrongful acts of public officers.    Cf. *Mapp* v. *Ohio*, 367 U. S. 643, 651–652.

I have dealt with the foregoing problems in a deliberately tentative manner.    My discussion is intended to be only suggestive, not exhaustive; I am not prepared to offer definitive solutions.    But it seems to me that these novel and difficult problems permeate the case and justify our adoption here of the disposition we made in *Bell* v. *Hood* of remanding the case for a consideration of them by the courts below in the first instance.