# Applicability of Criminal Statutes and "Whistleblower" Legislation to Unauthorized Employee Disclosures

Several criminal statutes may be applicable to improper disclosure by a Justice Department employee of information pertaining to Federal Bureau of Investigation (FBI) undercover investigations.

Employees of the FBI are excepted from the general "whistleblower" provisions of the Civil Service Reform Act of 1978; those provisions do not in any event apply where a disclosure is specifically prohibited by law, as is apparently the case here.

February 7, 1980

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

At your request, we have reviewed the criminal statutes to determine whether any might be applicable to Justice Department employees who may be found to have improperly disclosed information pertaining to the ABSCAM investigation.* We have also reviewed the so-called "whistleblower" statutes that were designed to provide a framework for, and protection of, proper disclosures by Departmental employees. Our quick review of these matters suggests that there are several criminal statutes that might have application here and that nothing in the "whistleblower" legislation will provide ground for justifying any leaks that may have occurred here.

## I. Criminal Statutes

### A. Privacy Act

Under the Privacy Act, 5 U.S.C. § 552a, a willful disclosure of information contained in a system of records by a federal officer or employee who has possession of or access to such records by virtue of his office or employment is punishable as a misdemeanor and subject to a fine of $5,000. 5 U.S.C. § 552a(i). The disclosure must be prohibited by either the Privacy Act or a regulation promulgated thereunder in order for the statute to apply. Since the information that was disclosed was probably contained in Federal Bureau of Investigation (FBI) investigative files, which we are informed are part of the FBI's system of

---

*NOTE: The ABSCAM investigation was an undercover investigation by the Federal Bureau of Investigation into allegations of political corruption and bribery, which culminated in the prosecution and conviction of a number of state and federal officials. *See, e.g., United States* v. *Myers,* 692 F.2d 823, 829–30 (2d Cir. 1982). Ed.

383

records, and since the disclosure would not be authorized under any of the categories listed in 5 U.S.C. § 552a(b), the willful disclosure of such information would be prohibited by 5 U.S.C. § 552a(b) and by departmental regulation, 28 C.F.R. 16.56(8).

## B. Theft of Government Property

Under 18 U.S.C. § 641, a person who knowingly converts to his own use or the use of another any record or thing of value to the United States, may be imprisoned for 10 years and/or be fined $10,000. Recently, the Government has argued in several cases that § 641 applies to unauthorized disclosure of government information because such information is a "thing of value" to the United States. The Second Circuit in *United States* v. *Girard,* 601 F.2d 69 (2d Cir. 1979), accepted the Government's theory and held § 641 applicable to the sale by a Drug Enforcement Administration (DEA) employee of information contained in a DEA computer which concerned the identity of possible informers and the status of certain drug investigations. The court rejected the defendants' argument that construing § 651 to apply to the theft of information would make the statute vague and overbroad and would thus infringe on First Amendment rights, stating that there was no danger of vagueness or overbreadth there because the defendants must have known that the disclosure of such information was prohibited by DEA regulations. However, a district court in the District of Columbia has expressly rejected the Government's interpretation of § 641 on the ground that it would infringe on the First Amendment. *United States* v. *Hubbard,* 474 F. Supp. 64, 79 (D.D.C. 1979). The Third Circuit in *United States* v. *DiGilio,* 538 F.2d 972, 978 (3d Cir. 1976), finding that photocopies of government documents were stolen, made it clear that its decision to affirm the conviction on this ground should not be read to imply a rejection of the Government's theory that § 641 applies to theft of government information.

## C. Removal of Government Records

If original government records were removed, 18 U.S.C. § 2071 would apply, which punishes such removal with 3 years in prison and/ or a $2,000 fine. If government records were photocopied on government equipment, and the photocopies were removed, 18 U.S.C. § 641 may apply. *United States* v. *DiGilio,* 538 F.2d at 977.

## D. Disclosure of Confidential Business Information

Under 18 U.S.C. § 1905, it is unlawful for a government employee to disclose information coming to him in the course of his employment which relates to the amount or source of any income, profits, losses, or expenditures of any person or firm. Violation of this statute may be penalized by a year's imprisonment, a $1,000 fine and/or removal from

employment. Since the ABSCAM investigation may be viewed as generating information related to the source and amount of income of Members of Congress, § 1905 may apply to the disclosure of such information. We do not know whether § 1905 would be construed that broadly because we have not found any published opinion in which a prosecution was brought under that statute.

### E. Civil Rights Statutes

Under 18 U.S.C. § 242, it is a crime for any person, "under color of any law, statute, ordinance, regulation, or custom," willfully to deprive any inhabitant of the United States "of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." If a person acquires information in his official capacity, and uses his official status to lend credibility to his statements when he discloses that information, his disclosure almost certainly would constitute action "under color of law," even if it is unauthorized.[1] Depending on the particular facts, the disclosure of ABSCAM information may have violated the constitutional rights of targets of the investigation in several ways; if the disclosures were intended to violate these rights, they were willful and therefore a crime.

First, by creating prejudicial publicity, the disclosures may have violated a potential defendant's right to a fair trial. Relatedly, if the disclosures persuaded witnesses with exculpatory testimony not to come forward, they may have violated a potential defendant's rights to compulsory process and due process of law.

Second, an argument can be made that the Constitution prohibits a member of the Executive Branch, acting under color of law, from tortiously undermining the effectiveness of a Member of Congress. The speech or debate clause, the congressional privilege against civil arrest, *see* Art. I, § 6, cl. 1, and the Constitution's strict limits on the circumstances under which a Member can be removed, *see Powell* v. *McCormack,* 395 U.S. 486, 522-48 (1969)—as well as general principles of separation of powers—all suggest that Members of Congress have some constitutional protection against efforts by Executive Branch officials to undermine their effectiveness as representatives. If those efforts take the form of a common law tort committed under color of law— here, perhaps defamation or an invasion of privacy by placing a person in a "false light"—an argument can be made that the Members' constitutional protection has been violated. *Cf. Wheeldin* v. *Wheeler,* 373 U.S. 647, 653-67 (1963) (Brennan, J., dissenting) (malicious abuse of process

---

[1] Depending on the facts, the disclosures might possibly violate 18 U.S.C. § 241, under which it is a crime for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." Section 241 reaches actions that were not done "under color of law."

by a federal official may be actionable as tort under federal common law).

Third, the disclosure here may have violated the Fifth Amendment's guarantee that no person be deprived of liberty or property without due process of law. The Privacy Act and its implementing regulations probably give the persons they are designed to protect—here the targets about whom information was disclosed—a statutory entitlement that amounts to a "property" interest within the meaning of the Due Process Clause. Any other statute or regulation that was designed to prevent the prejudicial disclosures of information gained in a criminal investigation would create a similar property interest, whether or not it provided criminal penalties. Reputation itself is probably not a "liberty" interest within the meaning of the Fifth Amendment's Due Process Clause, see Paul v. Davis, 424 U.S. 693, 701-710 (1976),[2] but an injury to reputation, combined with some additional significant injury, can constitute a deprivation of "liberty" within the meaning of the clause. See id. Here, the undermining of the ability of a target to perform his legislative function as a Member of Congress may constitute that additional injury. In these ways, the disclosures here may have deprived persons of their liberty or property without due process, thus—if willful—violating 18 U.S.C. § 242.

We have also reviewed the obstruction of justice statutes but, given the facts as we presently understand them, we do not find them applicable. 18 U.S.C. § 1503 applies only when a judicial proceeding is pending, and 18 U.S.C. § 1505 applies only when an administrative proceeding is pending. The only obstruction of justice statute applicable to an investigation is 18 U.S.C. § 1510, which is much narrower in scope than §§ 1503 and 1505, punishing an endeavor by bribery, misrepresentation or intimidation to obstruct, delay or prevent the communication of information related to the violation of a criminal statute of the United States. However, if it can be shown that the purpose of the disclosure was to terminate the investigation and that bribery, misrepresentation or intimidation was involved, it could be argued that § 1510 applies.[3]

---

[2] Paul v. Davis held, in a case involving a claim under 42 U.S.C. § 1983, that reputation alone was not a "liberty" interest protected by the Due Process Clause of the Fourteenth Amendment. Since the Court was explicitly concerned about "mak[ing] the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," 424 U.S. at 701, an argument might be made that this holding does not apply to interests protected against invasion by federal officials.

[3] If the purpose of the disclosure was to intimidate Members of Congress and impair their effectiveness, it could conceivably be argued that 18 U.S.C. § 372 applies. That statute punishes a conspiracy to prevent by force, intimidation, or threat a person holding any office, trust, or place of confidence under the United States from discharging his duties. Such an argument, however, may be founded on an overbroad construction of the term "intimidation."

## II. Whistleblower Protection

The Civil Service Reform Act of 1978 protects from agency reprisals employees who disclose information that they "reasonably believe evidences—(i) a violation of any law, rule, or regulation, or (ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law. . . ." 5 U.S.C. § 2302(b)(8)(A). This section covers positions in the competitive service, career appointee positions in the Senior Executive Service, and positions in the excepted services other than those at the policy level and those specifically excluded by the President. 5 U.S.C § 2302(a)(2)(B). It applies generally to all executive agencies, but enumerates exceptions, including the FBI. FBI employees enjoy the more limited protection of 5 U.S.C. § 2303, which prohibits reprisals against FBI employees who disclose information to the Attorney General or his designee.

If the Department decides to take a "personnel action" (defined broadly in 5 U.S.C. § 2302(a)(2)(A)) against an employee for "leaking" information to the press, it must determine whether the employee is covered by the "whistleblower" protections. The head of each agency is responsible for prevention of reprisals prohibited by the Act. 5 U.S.C. § 2302(c).

An employee of the FBI is not protected by the Act from reprisals for disclosure of information to the press. An employee of any other branch of the Department is protected only if: (1) He is not in a position exempted from competitive service because of its confidential, or policymaking character; (2) the disclosure was not specifically prohibited by law; and (3) the employee reasonably believed that the information evidenced violations, abuses, or dangers specified by the Act. Because it is likely that any disclosure would be violative at least of the Privacy Act (if not other statutes), it appears to us that Departmental employees would find no protection in these provisions.

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*
