Obadiah FISHER, Plaintiff,

v.

Janice G. WHITE, Defendant.

No. 89–CV–458 (JRB).

United States District Court,
E.D. New York.

April 24, 1989.

John R. Tobiason, New York City, for plaintiff.

Christy & Viener, New York City (Wayne Charles Matus, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

### I.

In this abuse of process case, which was removed to this Court, defendant Janice G.

White, Esq. has moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), for sanctions pursuant to Fed.R.Civ.P. 11, and, in the alternative, to transfer the case to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a). Plaintiff Obadiah Fisher has, in turn, cross-moved for sanctions, and for remand of the case under 28 U.S.C. § 1447(c) to the state court in which it was commenced. Before ruling on these motions, a history of this and related cases is warranted.

In 1983 Fisher was a plaintiff in *Ronald Litoff, Ltd. v. American Express Co.*, 83–CV–9432. That action was brought against, among others, American Express Travel Related Services Co., Inc. ("AMEX") over infringement of copyright for certain zodiac pendants. The case was assigned to the late Honorable Lloyd F. MacMahon. On November 18, 1986, summary judgment was entered against Fisher and his co-plaintiffs on all claims involving the zodiac pendants.

On December 11, 1986, in *Fisher v. Klein*, 86–CV–9522, Fisher again sued AMEX among others. That case was assigned to Judge MacMahon as well. There Fisher alleged copyright infringement and other claims with respect to the zodiac pendants and five other pendants.

Thereafter, having been unsuccessful in appealing the summary judgment against him in *Ronald Litoff, Ltd. v. American Express Co.*, Fisher moved before Judge MacMahon to vacate that judgment based on "new evidence." Judge MacMahon denied Fisher's motion to vacate the *Litoff* judgment on April 23, 1987. At that time he stated that "[t]he 'new evidence' which Fisher relies upon fails to demonstrate that any infringement occurred or that an unauthorized sales promotion was conducted."

After further procedural skirmishes, all defendants in *Fisher v. Klein* had summary judgment awarded to them by March 30, 1988. Undaunted, Fisher then moved for a declaratory judgment, objected to the entry of judgment in favor of AMEX and instituted a separate action for summary judgment under the caption *Fisher v. Klein*,

88–CV–3367. That case, too, was assigned to Judge MacMahon. AMEX and its co-defendants moved to dismiss the complaint and for sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. On August 12, 1988, Judge MacMahon completely dismissed the complaint noting that "[t]he actions of Fisher and his attorney in this litigation constitute a frontal assault on the doctrine of res judicata," and, citing the bad faith of Fisher and his attorney, imposed sanctions on both, the amount to be determined at a later day. In a judgment dated November 3, 1988, Judge MacMahon awarded sanctions against Fisher and Tobiason, jointly and severally, in the amount of $15,769.13. The imposition of sanctions is currently before the Circuit Court on appeal.

On January 12, 1989, Fisher's bank, National Westminster, was served with a restraining notice which restrained his personal and business bank accounts. On December 29, 1988, Fisher himself was served with a restraining notice. Both restraining notices were standard, printed legal forms which had had the pertinent information typed in. The restraining notice directed to the bank purported to issue out of the "Supreme Court of the State of New York, County of Kings," and stated November 3, 1988, as the date of the judgment sought to be enforced. The restraining notice directed to Fisher as judgment debtor purported to issue out of the "United States District Court, Southern District of New York," and stated December 22, 1988, as the date of the judgment sought to be enforced. Both restraining notices proclaimed in bold print that they were issued in the name of "THE PEOPLE OF THE STATE OF NEW YORK," and both stated that the judgment sought to be enforced had been entered in the United States District Court for the Southern District of New York. The restraining notices were signed by defendant Janice G. White as attorney for AMEX.

Alleging that the somewhat irregular process issued and served on behalf of AMEX was tortious, Fisher promptly commenced an action against White in the Civil Court of the City of New York, Kings County, by service of Summons and In-

dorsed Complaint. As the basis for his complaint, he alleged abuse of process in the service of the restraining notices and intentional infliction of emotional distress.

On February 8, 1989, defendant filed a notice of removal in the office of the Clerk of this Court, citing *Nationwide Charters & Conventions, Inc. v. Garber*, 254 F.Supp. 85 (D.Mass.1966) for the proposition that abuse of federal process is a federal question.

## II.

## FEDERAL QUESTION

Before ruling on defendant's motions to dismiss for failure to state a claim, to impose sanctions, or to transfer the case to the Southern District, it is necessary for this Court to decide whether it has subject matter jurisdiction. As indicated above, this case was removed by defendant who claimed that it stated a federal question for the purposes of original jurisdiction under 28 U.S.C. § 1331.[1] The Court disagrees.

Concerning the issue of a "federal question" the Supreme Court has stated:

> To bring a case within [28 U.S.C. § 1331], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a probable or conjectural one, must exist with reference thereto, *and the controversy must be disclosed on the face of the complaint, unaided by the answer or by the petition for removal.* Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of

action and anticipates or replies to a probable defense.

*Gully v. First National Bank*, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936) (emphasis added) (citations omitted). One result of the rule underscored above, is that the plaintiff is the master of his claim and may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). *See also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon.").

■ Plaintiff avers that his suit is based on state law. Indeed, the federal question alleged to exist in this case is not disclosed upon the face of the complaint as required by *Gully*. The complaint reads *in toto:*

1. Abuse of Process, serving false and improper restraining notice on or about 12/29/88;

2. Intentional Infliction of Emotional Distress through abuse of process as above.

WHEREFORE, plaintiff demands judgment of damages in the amount of TWENTY—FIVE THOUSAND ($25,000.00) DOLLARS with interest, disbursements and costs of this action.

Such a complaint does not raise a federal question on its face, and the Court may not rely on the notice of removal to find that it nevertheless has subject matter jurisdiction. *See Gully, supra. See also Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983) ("[A] defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the

---

1. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982 ed.).

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the

United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
28 U.S.C. § 1441(a) (1982 ed.).

case 'arises under' federal law.") (emphasis in original).

However, there are cases where a plaintiff "will characterize *his necessarily federal cause of action* solely in state law terms. In these situations the federal removal court will look beyond the letter of the complaint to the substance of the claim in order to assert jurisdiction." C. Wright, A. Miller, & E. Cooper, 14A *Federal Practice & Procedure: Jurisdiction 2d* § 3722 at 243 (1985) (emphasis added). This is so, however, only where state law has been preempted: "[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. v. Laborers Vacation Trust,* 463 U.S. at 24.

## NO COMPLETE PREEMPTION

In the context of removal jurisdiction there are, however, two kinds of preemption. Ordinarily, preemption will not provide a basis for removal. "[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption...." *Caterpillar Inc. v. Williams,* 107 S.Ct. at 2430 (emphasis in original). *See generally Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (suit as framed by plaintiff must state federal question; federal question raised as defense insufficient to sustain jurisdiction). It is only when state law has been *completely* preempted that removal on the basis of preemption is proper. *Caterpillar Inc. v. Williams,* 107 S.Ct. at 2430. In this context, federal common law as well federal statutes can so completely preempt state law as to provide a basis for removal. *See Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Madsen v. Prudential Fed. Sav. & Loan Ass'n,* 635 F.2d 797, 802 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

*Nationwide Charters & Conventions, Inc. v. Garber,* 254 F.Supp. 85 (1966), the case cited by defendant as controlling, would appear to hold that federal common law has completely preempted state law in cases alleging abuse of federal process. There, the plaintiffs brought suit in state court alleging that the defendants were liable for abuse of process for bringing an allegedly meritless suit in federal court under the Federal Aviation Act. In passing upon the questions now presented the *Nationwide* court stated:

The plaintiff's argument in support of the motion to remand is basically and simply that abuse of process is a common law tort which derives from state law and that the right to recover therefor is governed by state law. But the process alleged to have been abused is federal process and the federal courts have an interest not only in protecting their process but also in having such protection administered uniformly.

\* \* \* \* \* \*

*Thompson v. Standard Oil Co.,* 67 F.2d 644 (4th Cir.1933), cert. den. 292 U.S. 631, 54 S.Ct. 640, 78 L.Ed. 1485 (1934), upon which the plaintiff ... relies, is clearly distinguishable, in that the federal issue there arose defensively.... Here, it is the plaintiff's cause of action which calls into play federal concerns and federal policies.

The federal interest which is, here, involved is the essential concern of the federal courts with the integrity of their process, and there is no question that they have broad inherent powers to prevent and redress the abuse of that process.... The allegations, here, raise a kind of housekeeping or policing problem of the federal courts; and it is essential that this problem be resolved uniformly regardless of the plaintiff's choice of remedy.

\* \* \* \* \* \*

Federal law must, therefore, govern this claim. It is not necessary to spell out what that law is. Suffice it to say that where they have discerned a paramount federal interest, federal courts have frequently developed a 'specialized

federal common law,' in areas in which state common law also exists....

*Id.* at 87–88 (citations omitted).

To say, as in *Nationwide,* that this area requires federal common law because it demands uniformity, is redundant, since the formulation and application of federal common law in this area would, perforce, impose uniformity. The question that must be answered in deciding whether to formulate and apply federal common law is whether "there exists a 'significant conflict between some federal policy or interest and the use of state law.' " *City of Milwaukee v. Illinois & Michigan,* 451 U.S. 304, 313, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981) (quoting *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)).

## NO FEDERAL COMMON LAW FOR ABUSE OF PROCESS

■ As a general proposition, of course, the making and use of federal common law is not favored. *See Id. See also Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Federal Courts, unlike state courts, are not general common law courts and do not possess a general power to develop and apply their own rules of decision." *City of Milwaukee v. Illinois & Michigan,* 451 U.S. at 312, 101 S.Ct. at 1790 (citing *Erie, supra* ). "The enactment of a federal rule in an area of national concern and the decision whether to displace state law in doing so, is generally not made by the federal judiciary, purposely insulated from democratic pressures, but by the people through their elected representatives in Congress." *Id.* at 313, 101 S.Ct. at 1790. "[W]e start with the assumption that it is for Congress, not federal courts, to articulate appropriate standards to be applied as a matter of federal law." *Id.* at 317, 101 S.Ct. at 1792.

■ The instances where the fashioning of federal common law is authorized are "few and restricted," *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963), "and essentially fall into two categories: those in which a federal rule of decision is necessary to pro-

tect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (internal quotations and citations omitted). "In these instances," the Supreme Court has explained, "our federal system does not permit the controversy to be resolved under state law, either because the authority or duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control." *Id.* at 641, 101 S.Ct. at 2067.

This case obviously does not fall into the latter category—i.e., "when Congress has vested jurisdiction in the federal courts and empowered them to create governing rules of law," *id.* at 642, 101 S.Ct. at 2068—which is exemplified by the power Congress gave to the courts to develop federal common law in cases brought under the Labor Management Relations Act. *Id.* at 642–43, 101 S.Ct. at 2067–68. *See, e.g., Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). "Congress has not here done what was done in *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, and left to federal courts the creation of a federal common law for abuse of process." *Wheeldin v. Wheeler,* 373 U.S. at 651–52, 83 S.Ct. at 1445.

The Supreme Court has explained the latter category—i.e., the "uniquely federal interest" category—as including only "such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* at 641, 101 S.Ct. at 2067 (footnotes omitted). *United States v. Yonkers Bd. of Educ.,* 594 F.Supp. 466, 474–75 (S.D.N.Y.1984). This case does not fall within the "narrow areas" identified by the Supreme Court as "uniquely federal," as it does not involve anything akin to the rights and obligations of the United States, or an interstate or international dispute

**42**

concerned with the rights of States or our relationship with foreign nations, nor is this an admiralty case. *Cf. National Audubon Society v. Dept. of Water,* 869 F.2d 1196 (9th Cir. Oct. 6, 1988, as amended Dec. 22, 1988 and Feb. 8, 1989). Furthermore, the Court finds it significant that the Supreme Court has not indicated that, in the area of federal judgment enforcement or execution, uniformity is an overarching federal policy to be maintained at all costs. Indeed, Rule 69(a), Fed.R.Civ.P., expressly makes state procedures *the* procedures to be used in execution of a federal judgment. This, combined with the foregoing, convinces the Court that a suit alleging abuse of federal process in the execution of a federal judgment does not implicate uniquely federal interests of the kind that oblige courts to formulate federal common law. *See Eastern Indus., Inc. v. Joseph Ciccone & Sons, Inc.,* 532 F.Supp. 726 (E.D.Pa. 1982) (suit alleging abuse of federal process does not state a federal question; federal interest was not such that federal common law would be formulated and applied). *See also Tarkowski v. County of Lake,* 775 F.2d 173, 175 (7th Cir.1985) (while federal courts have power to prevent abuse of their process, such power can only be exercised in cases that are properly in federal court); *Voors v. Nat'l Women's Health Org., Inc.,* 611 F.Supp. 203, 207 (N.D.Ill. 1985) (defendants could not remove state abuse of process claim alleging that abuse of federal process was federal question; distinguishing *Nationwide*). Moreover, the process alleged to have been abused here is state process, in that the restraining notices complained of purported to issue in the name of the People of the State of New York without first having complied with N.Y.CPLR 5018(b).[2]

In sum, it is state, not federal, law that will govern in this abuse of process case, and removal was improper. Because this is not a case "arising under the Constitution, law, or treaties of the United States," 28 U.S.C. § 1331, and there being no diversity of citizenship among the parties, 28 U.S.C. § 1332, this Court is without subject matter jurisdiction.

## CONCLUSION

In light of the foregoing, the Court holds that it has no subject matter jurisdiction over this case: there is no diversity of citizenship between the parties, and no federal question is presented. Accordingly, pursuant to 28 U.S.C. § 1447(c), the Clerk of the Court is directed to remand this case back to the state court from which it was removed. The Court grants the plaintiff costs, the amount of which is to be determined upon application.

SO ORDERED.

---

**2.** *Docketing of judgment of court of United States.* A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.
N.Y.CPLR 5018(b) (McKinney supp.1989). *See Knapp v. McFarland,* 462 F.2d 935, 938 (2d Cir.1972).