ABBOTT LABORATORIES, an Illinois
corporation, Plaintiff,

v.

ZENITH LABORATORIES, INC., A New
Jersey corporation, Defendant.

No. 95 C 3328.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 1995.

Catherine A. Sazdanoff, Abbott Laboratories, Abbott Park, Daniel Reidy, Lester Julion Savit, David Witcoff, Tina M. Tabacchi, Douglas I. Lewis, Jones, Day, Reavis & Pogue, Chicago, IL, for plaintiff.

Malcolm Hirsten Brooks, Steven B. Vonck, Marc L. Fogelberg, George M. Sonders, McBride, Baker & Coles, Chicago, IL, Roy Wepner, Arnold H. Krumholz, Lerner, David Littenberg, Krumholz and Mentlik, Westfield, NJ, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Defendant Zenith Laboratories' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Motion for an Award of Attorney Fees and Expenses.

## I. BACKGROUND

### A. FACTS

Plaintiff Abbott Laboratories ("Plaintiff"), in Count I of its Complaint dated June 5, 1995 ("Complaint"), has brought a patent infringement action against Defendant Zenith Laboratories ("Defendant") pursuant to 35 U.S.C. § 271(e)(2)(A). In Count II of the Complaint, Plaintiff seeks a declaratory judgment of infringement against Defendant pursuant to 28 U.S.C. § 2201.

Plaintiff alleges that it has been selling terazosin hydrochloride under the trademark HYTRIN since 1987. (Complaint at ¶ 6.) Plaintiff received approval on August 7, 1987 from the United States Food and Drug Administration ("FDA") for its New Drug Application ("NDA") to market HYTRIN. *Id.* at ¶ 7. As a result, the Secretary of Health and Human Services ("the Secretary") added HYTRIN to its publically available list of drugs which have been approved for safety and effectiveness. *Id.* This is published as the FDA's "Approved Drug Products With Therapeutic Equivalence Evaluations" also known as the "Orange Book." According to Plaintiff, approved drugs may be used as the basis for a later applicant's Abbreviated New Drug Application ("ANDA") to obtain approval of the ANDA applicant's drug product under the provisions of 21 U.S.C. § 355(j). *Id.*

Plaintiff alleges that it received a letter from Defendant dated September 9, 1994 stating that Zenith had filed an ANDA with the FDA requesting approval to market a generic version of Plaintiff's HYTRIN (terazosin hydrochloride). *Id.* at ¶ 10. Defendant also sent Plaintiff samples of its proposed generic version of HYTRIN. *Id.* at ¶ 11.

Plaintiff claims that Defendant's sample includes the crystalline polymorph of terazosin hydrochloride and is a pharmaceutical composition as claimed in Plaintiff's United States Patent No. 5,294,615, entitled "Terazosin Polymorph and Pharmaceutical Composition" ("the '615 patent"). *Id.* at ¶¶ 5, 8, 12. The '615 patent claims (1) a crystalline polymorph of terazosin hydrochloride having a certain X-ray diffraction and (2) a pharmaceutical composition comprising a therapeutically effective amount of crystalline polymorph in a combination with a pharmaceutically acceptable carrier. *Id.* at ¶ 8. The '615 patent was issued on March 15, 1994 and remains in full force and effect until March 15, 2011. *Id.* *According to Plaintiff, its '615 patent is listed in the March, 1995 supplement to the "Orange Book." Id.* at ¶ 9 (emphasis added). As Defendant's ANDA application for approval to sell a generic form of HYTRIN does not address Plaintiff's '615 patent, Defendant's application constitutes an act of infringement under 35 U.S.C. § 271(e)(2)(A). *Id.* at ¶ 13.

In Count II of Plaintiff's Complaint, Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201. Plaintiff alleges that Defendant's threat to enter the market with its infringing product is imminent upon the expiration of Plaintiff's '097 patent [United States Patent No. 4,112,097] on or about September 5, 1995. *Id.* at ¶ 19. Plaintiff believes that Defendant is seeking FDA approval for its generic version of HYTRIN by as early as September 5, 1995, and that Defendant is taking action directed toward the making, selling, or using of its generic drug. *Id.* at ¶¶ 16, 18. Furthermore, Plaintiff asserts that Defendant has never indicated, despite

its opportunities to do so, that it does not plan to enter the market as soon as the FDA approves its generic form of HYTRIN. *Id.* at ¶ 18. Plaintiff asserts that because Defendant's threat to enter the market is imminent, there is a substantial controversy between Plaintiff and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Id.* at ¶ 19.

## B. PROCEDURE

Plaintiff brings its claim of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) alleging that Defendant has infringed Plaintiff's '615 patent by filing an ANDA which seeks to obtain approval under the Federal Food, Drug, and Cosmetic Act "to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent." 35 U.S.C. § 271(e)(2). More specifically, Plaintiff charges that Defendant's filing of its ANDA requesting approval for the manufacture and sale of a generic version of HYTRIN infringes Plaintiff's '615 patent which does not expire until March 15, 2011.

This is not the first time that Plaintiff has come before this Court claiming that Defendant infringed on its '615 patent pursuant to 35 U.S.C. § 271(e)(2)(A). Plaintiff brought a patent infringement action against Defendant pursuant to § 271(e)(2)(A) on November 14, 1994. In the Memorandum Opinion and Order issued by this Court on March 15, 1995 ("Prior Opinion"), this Court granted Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff failed to assert in its Complaint, dated November 14, 1994, that the '615 patent was listed in the "Orange Book." *Abbott Labs. v. Zenith Labs., Inc.,* no. 94 C 6792, 1995 WL 117984 (N.D.Ill., Mar. 15, 1995).

When the Court issued its Prior Opinion, Plaintiff was granted leave to file an amended complaint by April 14, 1995. On April 6, 1995, Abbott filed a Motion for Final Order, which this Court granted, and a Motion to Preserve the Status Quo Pending Appeal, which this Court denied. Next, Plaintiff filed a motion on April 24, 1995 before the Federal Circuit for expedited review and to preserve

the status quo pending appeal. On May 12, 1995, the Federal Circuit denied this motion in all respects. Subsequently, Plaintiff filed its Complaint in this Court on June 5, 1995. Plaintiff asked the Federal Circuit to stay the briefing schedule until this Court had an opportunity to consider the Complaint, or, in the alternative, to remand the case to this Court for consolidation.

## II. ANALYSIS

### A. RES JUDICATA

■ Defendant asserts that this Court's Prior Opinion, *Abbott Labs. v. Zenith Labs., Inc.,* no. 94 C 6792, 1995 WL 117984 (N.D.Ill., Mar. 15, 1995), is *res judicata* to Plaintiff's claims. The test for applying the doctrine of *res judicata* has three elements. "[T]here must be (1) a final judgment on the merits in a prior action; (2) identity of the cause of action in both the prior and subsequent suits; and (3) identity of parties or privies in these suits." *Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 180 (7th Cir.1994).

In this case, there is identity of parties and identity of the cause of action. At issue is whether there was a final judgment on the merits. In the previous suit between Plaintiff and Defendant, Final Judgment was granted on April 18, 1995. In the Prior Opinion this Court granted Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

■ A dismissal under Rule 12(b)(6) can be on the merits, in which case the principles of *res judicata* may bar an attempt to assert the same claim. *Wade v. Hopper,* 993 F.2d 1246, 1252 (7th Cir.), *cert. denied,* 510 U.S. 868, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993); *Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777, 781 (7th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). However, when a Rule 12(b)(6) Motion is on the merits, it is on the merits of the plaintiff's complaint as it is currently pending before the court. In other words, this Court issued Final Judgement on the merits as presented in Plaintiff's November 14, 1994 complaint, not the merits as stated in Plaintiff's new Complaint. Plaintiff's Complaint now asserts an additional fact, a fact which

this Court pin-pointed in its Prior Opinion as lacking.

Wright and Miller cautioned against applying *res judicata* to a claim that was dismissed in the prior action on a Rule 12(b)(6) motion. 5A C. Wright, A. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990). Wright and Miller explain:

It is doubtful that Rule 12(b)(6) normally should dispose of more than the question whether a particular statement constitutes a claim for relief. A court that thinks it convenient to test the merits under a preliminary motion should do so by converting the motion to dismiss into one for summary judgment, since this is the procedural device specifically designed to test the merits of the claim in advance of trial. Unless this has been done, application of res judicata seems to be a dubious path to follow.

*Id.* In the Prior Opinion, this Court did not convert Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) into a Motion for Summary Judgment. The court found that, because Plaintiff omitted a vital fact, the fact that the '615 patent was listed in the "Orange Book," it failed to assert a cause of action for which relief may be granted.

This case can be distinguished from those cases cited by Defendant in which the court applied the doctrine of *res judicata*. In both *Wade* and *Cannon*, the plaintiffs presented the exact same set of facts to the court in their new complaints as they had asserted in their prior complaints. The court in *Wade* determined that, the second suit brought by the plaintiff was based on "the same set of operative fact" as well as being based on the same legal theory. *Wade*, 993 F.2d at 1252. In *Cannon*, the court held that although the plaintiff's theory for relief had changed slightly, "her complaint [was] based on the same facts as her previous suits." *Cannon*, 784 F.2d at 778.

In sum, this Court's Prior Opinion is not *res judicata* of Plaintiff's claims now before the Court. Plaintiff has asserted a new statement of facts and this Court must determine whether Plaintiff's new Complaint is sufficient to state a claim upon which relief may be granted.

## B. RULE 12(b)(1)

Defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim for which relief may be granted pursuant to Rule 12(b)(6). Fed.R.Civ.P. 12(b)(1), (b)(6). This court will decide the 12(b)(1) Motion before the 12(b)(6) Motion because "the court must assume jurisdiction to decide whether the allegation state a cause of action on which the court can grant relief...." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987).

■ This Court has federal question jurisdiction of this suit pursuant to 28 U.S.C. § 1338(a) as it arises under an Act of Congress relating to patents, Title 35, United States Code Section 1 *et seq.* The Supreme Court has held that a District Court has jurisdiction if the complaint purports to state a claim under federal law, regardless of the actual validity of the claim. *Wheeldin v. Wheeler*, 373 U.S. 647, 649, 83 S.Ct. 1441, 1443–44, 10 L.Ed.2d 605 (1963). Therefore, even if this Court determines that Plaintiff has failed to state a claim for which relief may be granted under the Patent Code, this Court nevertheless has federal question jurisdiction because Plaintiff purports in its Complaint to state a claim under 35 U.S.C. § 271(e)(2)(A).

## C. RULE 12(b)(6)

■ When considering a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must view all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff. *Caldwell v. City of Elwood, Ind.*, 959 F.2d 670, 671 (7th Cir.1992) (citing *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991). A court should only dismiss a claim if it appears beyond a doubt that the plaintiff cannot establish any set of facts which would entitle it to the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Defendant claims that Plaintiff can prove no facts which would entitle it to relief on its patent infringement claim, because Plaintiff had not listed its '615 patent with the FDA before Defendant submitted its ANDA, a prerequisite for initiating a suit under 35 U.S.C. § 271(e)(2)(A). 21 U.S.C. § 355(b)(1) of the Food, Drug and Cosmetic Act which requires any person filing a NDA to include in its application

> the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug.

21 U.S.C. § 355(b)(1). The Act makes provisions for adding a patent to a NDA in § 355(c)(2) by providing that,

> if the holder of an approved application could not file patent information under [§ 355(b)] because no patent had been issued when an application was filed or approved, the holder shall file such information under this subsection not later than thirty days after the date the patent involved is issued. Upon the submission of patent information under this subsection, the Secretary shall publish it.

21 U.S.C. § 355(c)(2).

When Plaintiff received approval on August 7, 1987 from the FDA for its NDA to market HYTRIN, the application listed only the following two patents claimed by Plaintiff: U.S. Patent No. 4,026,894 ("'894 patent"), which relates to terazosin generally, and U.S. Patent No. 4,251,532 ("'532 patent"), which relates to terazosin dihydrate. The '615 patent was issued on March 15, 1994, but as explained below, Plaintiff did not amend its NDA by making a timely filing of the '615 patent with the Secretary as required by § 355(c)(2). Since Plaintiff's NDA did not list the '615 patent, Defendant argues that it was not obligated to address such patent in its ANDA, and thus it cannot be held liable for patent infringement pursuant to § 271(e)(2)(A). The Court agrees with Defendant that Plaintiff cannot hold it liable

for patent infringement pursuant to § 271(e)(2)(A), because Plaintiff did not have the '615 patent listed with the Secretary of Health and Human Services ("Secretary") at the time Defendant filed its ANDA.

## 1. Legal Background

Parts of this Memorandum Opinion and Order are a repeat of this Court's Prior Opinion, *Abbott Labs. v. Zenith Labs., Inc.,* no. 94 C 6792, 1995 WL 117984 (N.D.Ill., Mar. 15, 1995), in which this Court set forth the legal framework of a cause of action pursuant to 35 U.S.C. § 271(e)(2)(A).

Although the Supreme Court, in *Eli Lilly and Co. v. Medtronic, Inc.,* 496 U.S. 661, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990), did not confront the specific issue which this Court must address today, it provides an explanation of § 271(e) which reinforces this Court's opinion that Plaintiff cannot hold Defendant liable for patent infringement pursuant to § 271(e)(2)(A) because Plaintiff failed to list its '615 patent with the Secretary in a timely manner.

In *Eli Lilly,* the Supreme Court explained that §§ 271(e)(1) and (2) of the Price Competition and Patent Term Restoration Act of 1984 ("the 1984 Act") sought to eliminate a number of distortions of the seventeen year patent period. *Eli Lilly,* 496 U.S. at 669–670, 110 S.Ct. at 2688–2689. *See* 35 U.S.C. § 154 (granting to the patentee, for the term of seventeen years, the right to exclude others from making, using or selling the invention throughout the United States). Prior to the 1984 Act, the Court of Appeals for the Federal Circuit had determined that the manufacture, use or sale of a patented invention during the term of a patent constituted an act of infringement even if it was for the sole purpose of conducting tests and developing information necessary to apply for regulatory approval. *See Roche Products, Inc. v. Bolar Pharmaceutical Co.,* 733 F.2d 858, *cert. denied,* 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984). Thus, as those who planned to compete with the patentee could not conduct tests or develop information until after the expiration of the entire patent term, "the patentee's *de facto* monopoly would continue for an often substantial period until

regulatory approval was obtained. In other words, the combined effect of the patent law and the premarket regulatory approval requirement was to create an effective extension of the patent term." *Eli Lilly*, 496 U.S. at 670, 110 S.Ct. at 2688–89.

In response to *Roche*, Congress enacted § 271(e). § 271(e)(1) states in relevant part:

It shall not be an act of infringement to make, use or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs or veterinary biological products.

35 U.S.C. § 271(e)(1). § 271(e)(1) allowed competitors, prior to the expiration of a patent, to engage in otherwise infringing activities necessary to obtain regulatory approval. *Eli Lilly*, 496 U.S. at 671, 110 S.Ct. at 2689. The *Eli Lilly* court observed further that, as an additional means of eliminating the *de facto* extension of the patent term, the 1984 Act amended § 505 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 355, to authorize abbreviated new drug applications (ANDAs) which would substantially shorten the time and effort needed to obtain market approval. *Eli Lilly*, 496 U.S. at 676, 110 S.Ct. at 2691. "An ANDA may be filed for a generic drug that is the same as a so-called 'pioneer drug' previously approved." *Id.* (citing 21 U.S.C. § 355(j)(2)(A)).

The Supreme Court explained, however, that in addition to shortening the time and effort necessary to obtain market approval, the 1984 Act also sought to guard against infringement of patents relating to pioneer drugs. *Eli Lilly*, 496 U.S. at 676, 110 S.Ct. at 2691–92. NDA applicants were required to file with the FDA the number and expiration date of any patent which claims the drug which is the subject of the NDA application. *Id.* at 677, 110 S.Ct. at 2692 (citing 21 U.S.C. § 355(b)(1)). ANDA applicants, often seeking approval to market a generic form of a pioneer drug, must accordingly include in their ANDA applications one of four certifications with respect to each patent named in the previously filed NDA application for the pioneer drug: "(I) that such patent information has not been filed, (II) that such patent has expired, (III) the date on which such patent will expire, or (IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted...." *Id.* at 677, 110 S.Ct. at 2692 (citing 21 U.S.C. § 355(j)(2)(A)(vii)(I)–(IV)).

According to the Supreme Court, the certification requirement is of prime importance because it determines the date on which the approval of an ANDA can be made effective, and thus the date on which commercial marketing may begin. *Eli Lilly*, 496 U.S. at 677, 110 S.Ct. at 2692. If the ANDA applicant certifies that no patent information has been filed with regard to the pioneer drug, a Category I certification, or that any patents claiming the pioneer drug have expired, a Category II certification, then the FDA can approve the generic form of the drug immediately as long as it meets health and safety standards. *Id.* *See* 21 U.S.C. § 355(j)(4)(B)(i). If the ANDA applicant lists the date on which the patent claiming the pioneer drug will expire, a Category III certification, then the FDA can approve the ANDA effective as of that date. *Eli Lilly*, 496 U.S. at 677, 110 S.Ct. at 2692. *See* 21 U.S.C. § 355(j)(4)(B)(ii).

Finally, if the ANDA applicant makes a Category IV certification, it states that the patent, which claims the pioneer drug, is invalid or will not be infringed by the manufacture, use, or sale of the new drug. The Food, Drug and Cosmetic Act requires the ANDA applicant to give notice to the holder of the patent that an application has been filed seeking approval to engage in the commercial manufacture, use, or sale of the generic drug before the expiration of the patent which claims the pioneer drug. *Eli Lilly*, 496 U.S. at 677, 110 S.Ct. at 2692 (citing 21 U.S.C. § 355(j)(2)(B)(ii)). The notice must also set forth a detailed statement of the factual and legal basis for the applicant's opinion that the patent is invalid or will not be infringed. *Id.* Where an ANDA applicant makes the fourth certification, the patent owner is given 45 days, from the date on which he receives notice, to initiate a patent infringement suit. *Eli Lilly*, 496 U.S. at 677, 110 S.Ct. at 2692 (citing 21 U.S.C.

§ 355(j)(4)(B)(iii)). If the patent owner does not bring a suit, then the FDA can approve the ANDA effective immediately. *Id.* If the patent owner brings a suit, then FDA approval does not become effective until a court rules that the patent is not infringed or until expiration of 30 months, whichever occurs first. *Id.*

After providing a detailed analysis of the 1984 Act's amendments to the Food, Drug and Cosmetic Act, the Supreme Court observed,

> This scheme will not work, of course, if the holder of the patent pertaining to the pioneer drug is disabled from establishing in court that there has been an act of infringement. And that was precisely the disability that the new 35 U.S.C. § 271(e)(1) imposed with regard to use of his patented invention only for the purpose of obtaining premarketing approval. Thus, an act of infringement had to be created for these ANDA ... proceedings. That is what is achieved by § 271(e)(2)— the creation of a highly artificial act of infringement that consists of submitting an ANDA ... containing the fourth type of certification that is in error as to whether commercial manufacture, use or sale of the new drug ... [would] violate the relevant patent.

*Eli Lilly,* 496 U.S. at 678, 110 S.Ct. at 2692.

**2. In Our Case**

Following the scheme outlined by the Supreme Court in *Eli Lilly,* Defendant exercised its right, under § 271(e)(1) of the 1984 Act, to engage in activities necessary for regulatory approval of its generic form of HYTRIN. Pursuant to § 355(j)(2)(A)(vii), Defendant filed an ANDA which addressed both the '894 patent and the '532 patent, the two patents which were listed with the Secretary as claiming HYTRIN. Defendant acknowledged that its generic form of HYTRIN would come within the scope of the '894 patent, and thus Defendant made a Category III certification, seeking FDA approval of its generic drug effective only upon the expiration of the '894 patent. As to the '532 patent, Defendant made a Category IV certification claiming that its generic drug did not infringe the '532 patent. Accordingly, Defendant sent Plaintiff notification of its ANDA which requested approval from the FDA to market a generic form of HYTRIN and provided an explanation as to why it believed its generic form of HYTRIN would not infringe Plaintiff's '532 patent. (Complaint at ¶ 9.)

After receiving Defendant's notification, Plaintiff exercised its rights under § 271(e)(2)(A) to bring a suit against Defendant for patent infringement asserting that Defendant's ANDA is in error as to whether the manufacture, use and sale of Defendant's new drug will violate Plaintiff's '532 patent. However, as noted above, Plaintiff's Complaint does not charge that Plaintiff's ANDA was in error as to whether the new generic form of HYTRIN would violate the '532 patent. Rather, Plaintiff's Complaint asserts that Defendant's submission of its ANDA for a generic form of HYTRIN constitutes patent infringement as it does not address whether the manufacture, use and sale of Defendant's new drug will violate the '615 patent.

In its Prior Opinion, this Court held that "an action for patent infringement brought pursuant to § 271(e)(2)(A) cannot be premised on a patent not included in a NDA filed pursuant to § 355(b)(1), and thus not connected with a drug listed by the Secretary pursuant to § 355(j)(6)." (Memorandum Order and Opinion issued March 15, 1995 at 22.) In an effort to rectify the deficiency, Plaintiff listed the '615 patent with the Secretary, as Plaintiff now claims that the '615 patent is listed in the 1995 supplement of the "Orange Book." (As explained below, The "Orange Book" is the *Approved Drug Products With Therapeutic Equivalence Evaluations,* the book in which the patent information filed by an NDA applicant is listed.) The addition of this fact is still not sufficient to state a cause of action pursuant to § 271(e)(2)(A) upon which relief may be granted. As explained below, Plaintiff did not file its '615 patent in the time period required by § 355(c)(2) and Defendant submitted its ANDA before Plaintiff made its untimely filing of its '615 patent with the FDA.

### 3. Patents Must be Certified to Use § 271(e)(2)(A)

§ 271(e)(2)(A) states in relevant part:

> It shall be an act of infringement to submit an application under [§ 355(j) ] of the Federal Food, Drug, and Cosmetic Act or described in [§ 355(b)(2) ] of such Act for a drug claimed in a patent or the use of which is claimed in a patent ... if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

35 U.S.C. § 271(e)(2)(A). The language of § 271(e)(2)(A) clearly implicates the procedures outlined in § 355(j) of the Food, Drug and Cosmetic Act. As explained by the Supreme Court in *Eli Lilly*, § 355(j)(2)(A)(vii) requires "a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims a use for *such listed drug referred to in clause (i)* or which claims a use for such listed drug for which the applicant is seeking approval under this subsection and *for which information is required to be filed [§ 355(b) or (c) ] ....*" that the patent has expired, that approval is not sought until the date of expiration of the patent or that the patent is invalid. 21 U.S.C. § 355(j)(2)(A)(vii) (emphasis added). Clause (i) of § 355(j)(2)(A) requires that an ANDA contain information to show that the proposed use for the new drug has been previously approved for a drug listed under paragraph (6). 21 U.S.C. § 355(j)(2)(A)(i). Paragraph (6) requires the Secretary to publish a list of each drug which has been approved for safety and effectiveness. 21 U.S.C. § 355(j)(6). Accordingly, reading § 355(j)(2)(A)(vii) in conjunction with § 355(j)(2)(A)(i) and § 355(j)(6), a party who files an ANDA must certify that the patent, which claims a drug listed by the Secretary as one which has been approved for safety and effectiveness will not be infringed by the manufacture and sale of the new, often generic, drug which is the subject of the ANDA.

■ A person who seeks to have his drug included on the list published by the Secretary, pursuant to paragraph (6), must first submit an application pursuant to § 355(b) or (j). *See* 21 U.S.C. § 355(a). Applications submitted pursuant to § 355(b)(1) must include the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the NDA application. *See* 21 U.S.C. § 355(b)(1). The same information must be submitted for those patents issued after the FDA approved the applicant's NDA pursuant to § 355(c)(2). The patents included in the applications submitted pursuant to § 355(b)(1) or added to the list by the Secretary under § 355(c)(2) are precisely the patents which an ANDA applicant must address in its abbreviated application submitted pursuant to § 355(j). Accordingly, this Court concludes that, as the subparagraphs of § 355(j) must be read as a whole and in context with the other paragraphs of § 355—namely § 355(b) and (c), and as § 271(e)(2)(A) expressly incorporates § 355(j), an action for patent infringement brought pursuant to § 271(e)(2)(A) cannot be premised on a patent not included in a NDA filed pursuant to § 355(b)(1) or amended pursuant to § 355(c)(2), and thus not connected with a drug listed by the Secretary pursuant to § 355(j)(6).

### 4. Congressional Intent

The legislative history of the 1984 Act's amendments further affirms this Court's determination that a patent holder cannot bring an infringement action, pursuant to § 271(e)(2)(A), based on a patent which is not listed by the Secretary as one which claims the pioneer drug for which the patent holder seeks FDA approval. In *Eli Lilly*, the Supreme Court observed that Congress passed the 1984 Act to further eliminate the *de facto* extension of the patent term by amending § 505 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 355, to authorize abbreviated new drug applications (ANDAs) which would substantially shorten the time and effort needed to obtain market approval. *Eli Lilly*, 496 U.S. at 676, 110 S.Ct. at 2691–92. Interpreting § 271(e)(2)(A) as requiring an ANDA applicant to address patents, not listed in a NDA, would subvert the intended congres-

sional purpose of the 1984 Act: to shorten the time and effort necessary to obtain market approval for the generic form of a pioneer drug.

■ The FDA has also determined that "the timeliness of the filing of patent information by the NDA applicant is crucial to the success of the statutory scheme." (FDA Decision regarding Docket No. 94P–0144/CP1 and PSA1, January 6, 1995 at p. 4.) The FDA explained that patent information filed by an NDA applicant is listed in the *Approved Drug Products With Therapeutic Equivalence Evaluations,* the "Orange Book". (FDA Decision regarding Docket No. 94P–0144/CP1 at p. 4.) The Orange Book "provides notice to potential ANDA applicants of the patents which may protect the pioneer drug product, thus allowing them to provide the appropriate certification under [§ 355(j)(2)(A)(vii) ] of the act." *Id.* Relying on the House Report to the 1984 Act, the FDA determined that "Congress intended that an ANDA applicant need consult only the Orange Book to determine the existence of an applicable patent claiming the listed drug or a use of the listed drug." *Id.* at p. 7 (citing H.R.Rep. No. 857, 98th Cong., 2d Sess., pt. 1 at 22 (1984)) U.S. Code Cong. & Admin. News 2647, 2655. As "an agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress," *see United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985), the FDA's decision provides further support for this Court's determination that an ANDA applicant need provide certification, pursuant to § 355(j)(2)(A)(vii), only for patents listed by an NDA applicant in its application and subsequently, by the FDA in the Orange Book.

## 5. The Timing of Listing New Patents

Plaintiff asserts that HYTRIN was approved on August 7, 1987, and that the '615 patent was issued on March 15, 1994. (Complaint at ¶¶ 7, 8). The '615 patent should have been filed with the Secretary before April 14, 1994, 30 days after the patent was issued. As previously cited, § 355(c)(2) provides that if the holder of an approved NDA is issued a new patent which claims the pioneer drug, the NDA holder has 30 days after the patent is issued to file the new patent with the Secretary. 21 U.S.C. § 355(c)(2). If Plaintiff had filed the '615 patent with the Secretary within 30 days, the Secretary would have published the patent in the Secretary's revised list within 30 days. § 355(j)(6)(A)(iii) provides that,

> when patent information submitted under [§ 355(c) ] is to be published by the Secretary, the Secretary shall, in revisions made under clause (ii), include such information for such drug.

*Id.* at § 355(j)(6)(A)(iii). Clause (ii) of § 355(j)(6)(A) provides that

> Every thirty days ... the Secretary shall revise the list to include each drug which has been approved for safety and effectiveness under [§ 355(c) ] or approved under this subsection during the thirty-day period.

*Id.* at § 355(j)(6)(A)(ii).

Under this statutory framework, the '615 patent should have appeared on the Secretary's revised list on or before May 14, 1994. Plaintiff claims that the '615 patent is now listed in the March 1995 supplement of the "Orange Book." (Complaint at ¶ 9). From this fact, the only reasonable inference that this Court can draw is that the '615 patent was not filed within 30 days after the patent was issued because the patent appeared in a supplement to the "Orange Book" dated 10 months after the '615 patent should have appeared on the list. As a result, Plaintiff's listing of its '615 patent was "untimely."

The Act provides that the Secretary could withdraw an applicant's NDA approval for failure to make a timely file, but only after the Secretary provides the applicant with written notice that the patent was not filed. 21 U.S.C. § 355(e). § 355(e) provides that,

> the Secretary shall, after due notice and opportunity for hearing to the applicant, withdraw approval of an application with respect to any drug under this section if the Secretary finds ... the patent information prescribed by [§ 355(c) ] was not filed within thirty days after the receipt of

written notice from the Secretary specifying the failure to file such information ...

*Id.* The Act makes no provisions for when a patent is not filed in a timely manner and where the Secretary does not give notice to the patent holder. In other words, the statute does not offer guidance of what the FDA should do if the patent holder lists its patent with the Secretary after the 30 day deadline of § 355(c)(2).

However, an FDA Regulation addresses the situation where a patent holder of an NDA files its new patent information in an untimely manner, but has not received notice of the failure to file the patent information from the FDA. The regulation provides in part:

> If a patent on the listed drug is issued and the holder of the approved application for the listed drug does not submit the required information on the patent within 30 days of the issuance of the patent, an applicant who submitted an [ANDA] for that drug that contained an appropriate patent certification before the submission of the patent information is not required to submit an amended certification. An applicant whose [ANDA] is submitted after a late submission of patent information ... shall submit a certification....

21 C.F.R. § 314.94(a)(12)(vi) (1995).

In formulating this regulation, the FDA furthered the policy concerns of Congress as described above. In particular, there were two main policy concerns that the FDA addressed. First, Congress intended that the "Orange Book" provide *notice* to potential ANDA applicants of the patents which may protect the pioneer drug. Second, Congress wanted to get low-priced generic drugs on the market. "It was the agency's determination that the ANDA approval process could be severely disrupted and unduly delayed if ANDA applicants, who were given no notice through the Orange Book that an NDA holder believed a patent was applicable to a drug product, had to amend their applications to accommodate late-filed patent information." (FDA Decision regarding Docket No. 94P–0144/CP1 at p. 10).

The FDA did consider alternative ways to respond to those NDA holders who did not file new patents in a timely manner. 59 Fed.Reg. 50346 (1994) (to be codified at 21 C.F.R. § 314.94). First, the FDA could refuse to list late-filed patents in the "Orange Book." The agency rejected this alternative because it would defeat the Congressional policy of providing notice to ANDA applicants. "Absence of publication could lead an applicant to submit an ANDA that it would not have submitted had the patent been listed." FDA Decision regarding Docket No. 94P–0144/CP1 at p. 10. Such a submission would be a waste of the applicant's and the agency's resources and may later subject the NDA holder to an unnecessary patent infringement suit. *Id.*

Second, the agency considered the option that patent holders could file patents at any time with the Secretary, ignoring the 30–day filing period required by 21 U.S.C. § 355(c)(2). All ANDA applicants would then be required to amend their ANDA's to include a certification of any newly filed patent. This alternative was rejected because the agency feared that patent holders may manipulate the filing system in a way that would delay the approval of otherwise approvable ANDAs. *Id.*

The agency was concerned that NDA holders would delay filing new patents until within 30 months of the latest-expiring patent already listed. *Id.* When an NDA holder filed a new patent, an ANDA applicant would be required to certify the patent by either waiting until the patent expires, a Category III certification, or by claiming that the patent is invalid or will not be infringed, a Category IV certification. 21 U.S.C. § 355(j)(2)(A)(vii)(III)–(IV). If the ANDA applicant makes a Category IV certification, the procedure laid out in § 355(j)(4)(B) is initiated which allows the patent holder to bring an infringement suit pursuant to 35 U.S.C. § 271(e)(2)(A). As described above, if the patent holder does bring an action against the ANDA applicant, the FDA must wait at least 30 months, unless a shorter or longer period is judicially ordered, before its approval of the ANDA application will become effective. 21 U.S.C. § 355(j)(4)(B). "Thus, even if the NDA holder is unsuccessful in defending the late-filed patent, it will

have extended its period of market monopoly in a manner inconsistent with the intent of Congress when it enacted [the 1984 Act], by delaying the entry of otherwise approvable generic drugs onto the market." (FDA Decision regarding Docket No. 94P–0144/CP1 at p. 10).

In our case, Defendant's ANDA fits into one of two categories: (1) Defendant submitted its ANDA after Plaintiff's '615 patent was listed in the "Orange Book;" or (2) Defendant submitted its ANDA before Plaintiff listed the '615 patent in the "Orange Book."

First, if Defendant's ANDA falls into the first category, Defendant must amend its ANDA and certify Plaintiff's '615 patent, even if the patent was "untimely" filed. 21 C.F.R. § 314.94(a)(12)(vi) (1995). Plaintiff could bring a patent infringement suit pursuant to § 271(e)(2)(A), whether or not Defendant actually listed the patent in its ANDA, as explained below. Defendant's ANDA does not fall into the first category because Defendant filed its ANDA before September 9, 1994, the date on which Plaintiff alleges it received a letter from Defendant stating that it had filed an ANDA with the FDA. (Complaint at ¶ 10). The '615 patent was listed in the March 1995 supplement of the "Orange Book." *Id.* at ¶ 9. Therefore, Plaintiff's ANDA was filed before the '615 patent was listed in the "Orange Book."

■ Second, if Defendant's ANDA falls into the second category, Defendant is not required to amend its ANDA to certify Plaintiff's '615 patent. 21 C.F.R. § 314.94(a)(12)(vi) (1995). If such certification is not required, then the procedure for bringing a patent infringement action pursuant to 35 U.S.C. § 271(e)(2)(A) is not initiated by 21 U.S.C. § 355(j)(4)(B), and Plaintiff does not have a cause of action for patent infringement before Defendant brings the drug to market. Defendant's ANDA does fall into the second category because the ANDA was filed before September 9, 1994, but the '615 patent did not appear in the "Orange Book" until the March 1995 supplement. (Complaint at ¶¶ 9, 10). As a result, Plaintiff has not stated a cause of action for which relief may be granted and Defendant's

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.

### 6. The *Marion Merrell Dow* Decision

The patent holder does not have to depend upon the ANDA applicant to first include the existing patent in its certification as long as the ANDA applicant should have certified the patent. *Marion Merrell Dow, Inc. v. Hoechst–Roussel Pharmaceuticals Inc.*, 32 U.S.P.Q.2d 1156, 1994 WL 424207 (D.N.J. 1994). If a patent is properly filed with the Secretary and listed in the "Orange Book" then the ANDA applicant is on notice of the patent, and should certify the patent in its ANDA application. *Id.* at 1158, 1994 WL 424207. In *Merrell*, the court explained that "the proper inquiry is, should the certification have included the patent and if so, is there an infringement of the patent?" *Id.* If the ANDA applicant does not certify a properly listed patent, then the patent holder still has a cause of action under § 271(e)(2)(A). *Id.* at 1159, 1994 WL 424207.

In *Merrell*, the ANDA applicant certified the patent holder's two listed patents. Thereafter, to avoid litigation pursuant to § 271(e)(2)(A), the ANDA applicant changed its certification to omit reference of the two listed patents, asserting that the patent holder no longer had a cause of action under § 271(e)(2)(A). *Id.* at 1158, 1994 WL 424207. In *Merrell*, the patent holder did have its patent on file with the FDA at the time the applicant filed its ANDA, and, for that reason, it was immaterial whether or not the applicant certified the patent in its ANDA. In our case, Plaintiff did not have the '615 patent listed in the "Orange Book" when Defendant filed its ANDA. Therefore, Defendant was not required to certify the '615 patent in its ANDA and Plaintiff does not have a cause of action under § 271(e)(2)(A).

### 7. Allegations of Inappropriate Listing

Defendant claims that Plaintiff's listing of the '615 patent in the March 1995 supplement of the "Orange Book" is inappropriate because the HYTRIN drug at issue does not contain the form of Terazosin claimed by the '615 patent. (Defendant Brief at 8). To support its contention, Defendant presents

excerpts from memoranda previously filed by Plaintiff with this Court and with the Federal Circuit, but Defendant has not offered any affidavits to support its claim.

Rule 12 of the Federal Rules of Civil Procedure provides in part:

> If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief may be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

Fed.R.Civ.P. 12(b). In this case, matters outside the pleading have not been presented to the Court. In conjunction with Defendant's Motion to Dismiss, neither party has presented any affidavits, depositions, answers to interrogatories, or admissions on file, which could be considered on a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 56(c). As a result, this Court will treat Defendant's Motion as a Motion to Dismiss and only consider facts alleged in Plaintiff's complaint in the light most favorable to Plaintiff. *Caldwell,* 959 F.2d at 671.

### 8. Uraguay Round Agreements Act

Plaintiff contends that Defendant must certify Plaintiff's '615 patent because the Uraguay Round Agreements Act ("URAA"), 60 Fed.Reg. 30,309 (1995), requires that all ANDA applicants amend their patent certifications to conform with the patent extensions granted by the URAA. As explained above, Defendant is not required to amend its application to certify Plaintiff's "untimely" filed '615 patent. Therefore, Plaintiff does not have to amend its ANDA to extend the expiration date of the '615 patent.

### D. DECLARATORY JUDGMENT

This Court grants Defendant's Motion to Dismiss on Count II of Plaintiff's Complaint where Plaintiff seeks a declaratory judgment of patent infringement pursuant to 28 U.S.C. § 2201. This court denies jurisdiction over the declaratory judgment claim because

there is no actual controversy and because it would undermine Congress' intent in formulating the 1984 Act.

For a court to have jurisdiction over a declaratory judgment claim there must be a conflict that is "real and immediate" in that there is a "true, actual controversy." *Lang v. Pacific Marine & Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990). The Federal Circuit has ruled that a patentee can bring a declaratory judgment action against a future infringer. *Id.*

The Federal Circuit set forth a two-prong test designed to detect the existence of a definite and substantial controversy in satisfaction of the justiciability requirement for declaratory judgment jurisdiction. *Id.* First, Defendant must be "engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a), or be making meaningful preparation for such activity." *Id.* Second, the acts of "the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that suit will be forthcoming." *Lang,* 895 F.2d at 764. The decision whether to dismiss the declaratory judgment claim must be determined on the facts existing at the time the complaint under consideration was filed. *Telectronics Pacing Systems v. Ventritex, Inc.* 982 F.2d 1520, 1527 (Fed.Cir. 1992).

In *Lang,* the owners of two patents that pertained to certain features of a ship's hull brought a declaratory judgment action against the defendants, who were in the process of constructing a ship hull. *Lang,* 895 F.2d at 763. The plaintiffs claimed that the hull, when completed, would infringe on the patents. *Id.* The court held that the plaintiffs failed to meet the actual controversy requirement necessary to maintain a declaratory judgment because the nine-month period between the initiation of the lawsuit and the completion of the ship hull was too remote to cause concern. *Id.* at 764.

In our case, Plaintiff alleges that Defendant is taking action directed toward the making, selling, or using of its generic

version of HYTRIN and that Defendant seeks approval from the FDA to market its generic version of the drug by September 5, 1995. (Complaint at ¶¶ 16, 18). Plaintiff also states that Defendant has never indicated that it does not plan to enter the market upon its requested date of approval of September 5, 1995, despite being given numerous opportunities to do so. *Id.* at ¶ 17. This Court finds these allegations insufficient to state a controversy as required by 28 U.S.C. § 2201. The FDA has not given Defendant approval to market a generic form of HYTRIN and the fact that Defendant has not indicated that it does not plan to enter the market is not sufficient to show that Defendant intends to enter the market.

In both *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.Supp. 1269 (N.D.Cal.1991), *aff'd*, 991 F.2d 808, 26 U.S.P.Q.2d 1524 (Fed.Cir. 1993), and *Telectronics*, 982 F.2d at 1527, the possibility of FDA approval of the products at issue would take a year or more from the time that the plaintiffs filed their complaints. As a result the courts refused to accept jurisdiction of the plaintiffs' declaratory judgment claims. *Id.* In our case, Defendant may receive FDA approval for its generic form of HYTRIN three months from the date that Plaintiff filed its Complaint. However, in our case, as in *Intermedics* and *Telectronics*, FDA approval had not been granted at the time that Plaintiff requested declaratory judgment. In addition, there is no guarantee that the FDA approval will be forthcoming on any particular date in the future. Furthermore, the fact that Defendant requested FDA approval of its generic version of HYTRIN does not mean that Defendant will not change its course of actions and decide not to market the drug. In addition, the fact that Defendant continues to defend itself in lawsuits brought against it by Plaintiff does not show a definite intention to market a generic version of HYTRIN.

 Even if Plaintiff had alleged facts sufficient to state that a justiciable controversy exists, this Court has discretion to decline the declaratory judgment jurisdiction. *Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed.Cir.1991). This Court declines to hear Plaintiff's claim for declara-

tory judgment because it would undermine Congress' intent in formulating the 1984 Act. As explained previously in this Opinion, one of the reasons that Congress passed 35 U.S.C. §§ 271(e)(1) and (2) of the 1984 Act was to allow competitors to engage in otherwise infringing activities necessary to obtain regulatory approval, and thereby get low-priced generic drugs on the market. *Eli Lilly*, 496 U.S. at 671, 110 S.Ct. at 2689. It is for this reason that § 271(e)(1) acts as a "safe haven" provision so that those who plan to compete with the patentee may conduct tests and develop information to prepare a generic drug for market. *Id.* at 670, 110 S.Ct. at 2688–89.

In *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.Supp. at 1290, the court utilized its discretion to decline to hear a patentees request for declaratory judgment. The court stated that,

We are concerned that if we exercise jurisdiction over declaratory relief actions in a setting like this, where we have held that defendants are entitled to protection from suit for infringement under § 271(e)(1), *we will be undermining one of Congress' purposes in enacting this exemption.* It appears to us that congress intended this exemption to offer a "safe haven" to companies who confined their conduct to the boundaries set forth in the statute. The purpose of the safe haven is to permit these companies to develop and test their new products so that they can be positioned to enter the generic market at the end of the lives of relevant patents.... [T]he promise by Congress of a safe haven could prove to be completely illusory if the courts permitted competitors to proceed full bore with the expensive, resource-draining, and personnel-distracting litigation in the form of actions for declaratory relief. *It makes little sense, and thus we assume would be inconsistent with Congress' intent, to protect companies like [defendant] from suit for actual patent infringement but leave them fully exposed to declaratory relief actions whose gravamen and burdens are much the same.*

*Id.* (emphasis added). The Federal Circuit affirmed in a nonprecedential decision, *In-*

*termedics, Inc. v. Ventritex Co., Inc.*, 991 F.2d 808, 26 U.S.P.Q.2d 1524 (Fed.Cir.1993), and agreed with the district court that "exercising jurisdiction over [defendant's] declaratory relief action could undermine the [271(e)(1) ] exemption." 26 U.S.P.Q.2d at 1528. The Federal Circuit stated "to permit [defendant] to be protected from direct suit for infringement and yet allow the same activities to be subject to suit in a declaratory judgment action would be nonsensical." *Id.*

 Plaintiff asserts that the "safe haven" provided by 35 U.S.C. § 271(e)(1) was removed when Defendant filed its ANDA. As explained above, 35 U.S.C. § 271(e)(2) may not be invoked by Plaintiff as a valid cause of action for infringement of its '615 patent. Because § 271(e)(2) can not be invoked, the "safe haven" provided by § 271(e)(1) remains in force until Defendant begins to market its generic form of HYT-RIN.

In sum, this Court refuses to exercise jurisdiction over Plaintiff's declaratory judgment claim because it would undermine Congress' policy in enacting the 1984 Act and because a controversy will only materialize if the FDA approves the accused drug and if Defendant decides to market the drug. Furthermore, as this Court stated in its Prior Opinion, Plaintiff does have a cause of action against Defendant pursuant to § 271(a) if Defendant proceeds to manufacture and sell a product that infringes on its '615 patent. The FDA expressed the same sentiments when it stated that "[i]f the NDA holder believes the late-filed patent is truly valid, it may sue the ANDA holder for patent infringement upon the commencement of marketing. Presumably the court adjudicating the validity or applicability of the patent could either enjoin the marketing of the generic copy or assess treble damages against the generic company should the patent be infringed." (FDA Decision regarding Docket No. 94P–0144/CP1 at p. 11).

### E. ATTORNEY FEES

 Defendant requests that this Court award it attorney fees pursuant to 35 U.S.C. § 285. The Patent Code provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In determining whether a case is "exceptional" the district court is to look at the totality of the circumstances. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1128 (Fed. Cir.), *cert. denied*, 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). Circumstances that support a finding of an "exceptional" case include "inequitable conduct in the procurement of a patent, ... willful infringement, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed.Cir.1985). This Court finds that this is not an "exceptional" case as provided for in 35 U.S.C. § 285 and denies Defendant's request for an award of attorney fees.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted and Defendant's Motion for an Award of Attorney Fees is denied.